JOHN H. PEAL, PROSECUTOR, PLAINTIFF IN ERROR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK ET AL., DEFENDANTS IN ERROR.

JOHN O'ROURKE AND WILLIAM REILLY, PROSECUTORS, PLAINTIFFS IN ERROR, v. THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK ET AL., DEFENDANTS IN ERROR.

Submitted March 20, 1901—Decided June 17, 1901.

The charter of Newark (*Pamph. L.* 1857, *p.* 116) authorizes, through the common council of that city, regulation and inspection of buildings and the appointment of necessary subordinate officers to hold during the pleasure of the council; every officer elected or appointed in pursuance of the act to take and subscribe an

official oath before entering upon his duties. Later general legislation, enacted after the constitutional amendment requiring regulation of the internal affairs of cities to be by general laws, authorizes the appointment in any city, by its common council, of a building inspector, to hold for a term to be fixed, within a stated limit, by the council, with specified duties and other duties to be defined by the council. *Pamph. L.* 1886, *p.* 321; *Pamph. L.* 1899, *p.* 21. The common council of Newark ordained building regulations and provided for an officer, styled superintendent of buildings, with, substantially, the powers of the general law, and appointed such an officer, and fixed his term at the maximum allowed by that law. It also appointed assistants to such officer and attempted to fix for them like terms. *Held*—

1. That such appointment of "superintendent of buildings" must be taken to be that of the statutory "inspector of buildings;" that the appointee could not be removed by a succeeding council, at will, during the fixed term, and that his failure to take the official oath prescribed by the city charter, before he entered on his duties, did not deprive him of a standing to contest by *certiorari* his attempted removal from his office.

2. That the attempt to fix terms for the assistants, holding simply under the city charter as subordinate officers, was void as against a succeeding council.

On error to the Supreme Court. The opinions of the Supreme Court are reported *ante p.* 105.

For the plaintiffs in error, *Joseph A. Beecher.*

For the defendants in error, *McCarter & Adams.*

The opinion of the court was delivered by

COLLINS, J. These cases may be conveniently considered together. The prosecutors challenged, so far as affected them, respectively, the municipal action of November 9th, 1900, shown on the minutes of the common council of the city of Newark, as follows:

"Ald. Bacheller moved that the position of superintendent of buildings now held by John H. Peal be and the same is hereby declared vacant (*viva voce* vote). Carried.

"Ald. Bacheller moved that Leslie B. Miller be and he hereby is appointed superintendent of buildings at an annual salary of fifteen hundred dollars, payable monthly; said appointment to take effect at once (*viva voce* vote). Carried.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"Alderman Bacheller moved that the positions of assistants to the superintendent of buildings now held by William Reilly and John O'Rourke be and the same are hereby ordered vacant (*viva voce* vote). Carried.

"Alderman Bacheller moved that George Hicks and Moorehouse Battye be and they hereby are appointed assistants to the superintendent of buildings at an annual salary of one thousand dollars, each, payable monthly; said appointments to take effect at once (*viva voce* vote)."

The grounds of challenge were the same in each case, viz., that the prosecutors, on April 13th, 1900, by the previous council, had been appointed to their offices, respectively, for terms of two years. The Supreme Court held the offices to be within the provisions of the twenty-first section of the charter of Newark (*Pamph. L.* 1857, *p.* 116), authorizing appointment of "such subordinate officers not herein named as the common council should think necessary for the better ordering and governing the city and the carrying into effect the powers and duties conferred and imposed upon the common council" by that act. The charter provides, in the same section, that every person appointed to office under its provisions "shall continue in office until the office for which he shall have been appointed shall be declared vacant, or until another person shall be appointed to succeed him and shall enter upon the duties of his office."

The court was clearly right as to the offices held by O'Rourke and Reilly, and the necessary result is that the attempt of April 13th, 1900, to fix a term for those offices was *ultra vires* and void. *Uffert* v. *Vogt*, 37 *Vroom* 621.

But the case of Peal is on a different footing. By the city charter (section 31, subdivision XXX.) the common council is empowered to "regulate and control the manner of building dwelling-houses and other buildings; \* \* \* to regulate the construction of chimneys; \* \* \* to prevent the setting up or construction of furnaces, stoves, boilers, ovens or other things in such a manner as to be dangerous; \* \* \* to authorize any city officer or person or persons whom they may

designate for that purpose to examine and inspect, by day, any place or places for the purpose of ascertaining whether the same is or are in a safe condition, and if not, to direct or cause the same to be made so; to regulate or prohibit the carrying on of manufactories dangerous in causing or promoting fires; * * * to require all such further or other acts to be done, and to regulate or prohibit the doing all such further or other acts as they may deem proper to prevent the occurrence and provide for the extinguishment of fires in said city."

The case is silent as to what was ordained under this authority, but incidentally it does appear that in the revised general ordinance of 1889 there was reference to a "superintendent of buildings" and prescription of his duties. Doubtless that official title is of early origin.

On April 28th, 1886 (*Pamph. L., p.* 321), it was enacted by the legislature as follows:

### "An act concerning inspectors of buildings in cities of this state.

"1. *Be it enacted* by the Senate and General Assembly of the State of New Jersey, That in all cities of this state it shall be lawful for the board of aldermen or common council of said cities to appoint one inspector of buildings.

"2. *And be it enacted,* That said inspector of buildings shall be either an architect, carpenter, mason, or other mechanic, whom said board of aldermen or common council shall deem to be capable to fill the position, and that the duties of said inspector shall consist in the careful inspection of all buildings in the course of erection, and any and all buildings undergoing repairs and alterations, and all buildings, chimneys and structures which have become dangerous or unsafe, and to see that proper precautions are taken for the protection of life and property.

"3. *And be it enacted,* That before any person or persons shall erect, move, raise, or commence to erect, move or raise, any building or buildings, the person or persons intending or desiring to erect, move or raise said building or buildings,

shall first apply for and obtain from said inspector of buildings a permit to do so, and all failures to comply with this requirement shall be punishable by a fine, to be hereafter provided for by ordinance by said board of aldermen or common council; provided, that nothing herein shall affect the present powers of any board of fire commissioners to prohibit and regulate the erection or alteration of buildings and structures.

"4. *And be it enacted,* That said board of aldermen or common council shall have power to further prescribe the duties and fix the compensation of said inspector of buildings, either by fee or fixed salary, and to fix his term of office, not to exceed one year.

"5. *And be it enacted,* That said inspector shall at any time be removable for cause; provided, first, that charges and specifications having been preferred to said board of aldermen or common council, said board of aldermen or common council, by ballot, shall decide by a two-thirds vote of all the members of said board to remove said inspector of buildings.

"6. *And be it enacted,* That all acts or parts of acts inconsistent with this act are hereby repealed, and that this act shall take effect immediately.

"Approved April 28, 1886."

By an amendment approved March 8th, 1899 (*Pamph. L., p.* 21), the word "one" in the fourth section was changed to "two," thus authorizing an official term of two years.

Peal claims the protection of this legislation, while the defendants insist that it is permissive only, and has been given no effect in Newark. The Supreme Court—erroneously as we think—held with the defendants.

This general legislation, enacted after the adoption of the constitutional amendment of 1875 prohibiting special and enjoining general laws regulating the internal affairs of cities, must be considered as supplemental to Newark's charter and as repealing or superseding any inconsistent provision. *Haynes* v. *Cape May,* 23 *Vroom* 180; *Township of Kearney* v. *Ballantine,* 25 *Id.* 194; *Central Land Co.* v. *Bayonne,* 27 *Id.* 297.

It is too plain for contrary argument that if a common council makes an appointment within the purview of this legislation, all the statutory incidents must attach to the appointment. The powers—not the name adopted—will afford the test of the establishment of the office.

As before stated, Newark's revised general ordinance of 1889 is not before us, and we cannot be sure what were the duties of the "superintendent of buildings" therein referred to, but it is not too much to presume that they were substantially those contemplated by the act of 1886, for we find in the brief of counsel for the defendants the following concession: "The duties which the act outlines for the inspectors are practically identical with those which, under the various ordinances of Newark, the common council has prescribed for the superintendent of buildings." The argument (unsound, as we have seen) is that the Newark common council has continued to act under the city charter, ignoring the later general law. That law is self-operative if the real, even though not nominal, office exists, and it is clear from the proofs in this case that it has always been regarded as in force in Newark, both by the common council and its appointees.

In an ordinance to regulate the construction of buildings, approved May 2d, 1896, which is in evidence, there is reference throughout to the "inspector," a term thus defined in section 6: " 'Inspector' means the inspector of buildings appointed under the provisions of this ordinance." No provision for appointment is contained in the ordinance, and the proof in the case is that the powers conferred have always been exercised by the incumbent of the office of "superintendent of buildings," already existent. Section 3 of this ordinance devolves on the "inspector" the duty of granting or refusing a permit for the erecting, repairing, changing or altering any building or structure within the limits of the city, a function, in terms, vested in the officer contemplated by the act of 1886.

On June 29th, 1896, there was approved an ordinance, couched, in form, as an amendment to section 131 of "An

ordinance comprising the ordinances of the city of Newark,"
.filed October 2d, 1889, which reads as follows:

"Sec. 131. There shall be appointed by the common coun-
cil of the city of Newark an officer to be designated as super-
intendent of buildings of the city of Newark; said superin-
tendent shall be an architect, mason or carpenter, who shall
devote his whole time and labor to the discharge of the duties
of his office as herein defined, and who shall receive for his
services the annual salary of fifteen hundred dollars. There
shall also, in like manner, be appointed an assistant to said
superintendent of buildings, who shall be an architect, mason
or carpenter, who shall devote his whole time and labor to
duties assigned to him by the superintendent of buildings
and assist him in the work of the office under his direction,
and who shall receive for his services the annual salary of
one thousand dollars."

On May 21st, 1897, the prosecutor Peal was appointed by
the common council "superintendent of buildings." The oath
administered to him was to perform the duties of "inspector
of buildings." On August 6th, 1897, George Thompson was
appointed "assistant superintendent of buildings." The oath
administered to him was to perform the duties of "assistant
building inspector." On September 1st, 1899, without any
ordinance to increase the number of assistants, the prosecu-
tors O'Rourke and Reilly were appointed "assistants to the
superintendent of buildings," and took official oaths under
that title. On April 13th, 1900, a resolution was adopted
by the council appointing Peal "superintendent of buildings"
for the period of two years, from May 1st, 1900, at a salary
of $1,500 per year, payable monthly. This resolution was
presented to the mayor April 16th, 1900, and filed without
his signature April 27th, 1900, and Peal filed, on May 1st,
1900, his written acceptance of the office. If the office was,
in fact, that contemplated by the acts of 1886 and 1899, this
resolution, by legal authority, fixed a term therefor during
which Peal can be removed therefrom only for cause.

But the defendants, changing their ground, put forth the
claim that another person, namely, George Thompson, was,

on April 13th, 1900, appointed by the council to an office styled "inspector of buildings," and that he must be taken to be the officer contemplated by the acts of 1886 and 1899. Thompson was appointed on that day to *an* office, and has not since been disturbed, but it is plain that he was not appointed to a new office, but was merely reappointed to that he had previously held. It will be remembered that in 1897 he had been appointed "assistant superintendent of buildings" and had been sworn in as "assistant building inspector." The defendants now produce from the files of the city clerk a resolution purporting to have been that adopted April 13th, 1900, which reads as follows: *"Resolved,* That George Thompson be and he is hereby appointed inspector of buildings of the city of Newark for the period of two years from and after the first day of May, 1900, at the annual salary of $1,000, payable monthly." But, unfortunately for the defendants' contention, the minutes of the council, also in evidence, recite the resolution adopted as appointing Thompson "assistant superintendent of buildings" for the term and at the salary stated. Strangely enough, the resolutions of the same meeting appointing O'Rourke and Reilly for a like term and at a like salary each style the office to which the appointment is made as "assistant to the superintendent of buildings," while the minutes of the council recite the resolution adopted in each case as appointing to the office of "inspector of buildings."

The fact seems to be that, colloquially, the head of the building department has in Newark always been called "superintendent" and his subordinates have indifferently been called inspectors or assistants to the superintendent; hence the indiscrimination in the official procedure. It is perfectly clear that the outgoing council, on April 13th, 1900. meant to secure the tenure of all the officials of the department by fixed stated terms for them. As to the three assistants, this was ineffectual, for the reason above stated, viz., that their appointment could rest only on the charter as that of subordinate officers thought necessary by the council and holding at pleasure of the appointing power. The council could not bind its successors. The head of the department, however

styled, was the inspector of buildings, whose appointment was authorized by the act of 1886. If there were no other way of determining which of the four officers was the head, the larger salary fixed for him marks Peal as such, and besides, the proofs show him to have been such in fact. The Fire-escape law of 1899 (*Pamph. L., p.* 359), undoubtedly framed with the situation of Newark in mind, speaks of the "chief building inspector," and the uncontradicted testimony is that Peal has always performed the duties imposed by the act, and further, that there has never been any difference as between Thompson, O'Rourke and Reilly with respect to their duties, each being in charge of a territorial district and being subordinates of Peal.

Lastly, the defendants urge that Peal has no *locum standi,* because he has not, since his last election, complied with section 24 of the city charter, which reads as follows:

"24. *And be it enacted,* That every person who shall be elected or appointed to any office in pursuance of this act shall, before he enters upon the duties of his office, take and subscribe before the city clerk or the mayor of said city the oath of allegiance to this state, and likewise an oath or affirmation that he will faithfully and impartially execute the trust reposed in him, according to the best of his ability and understanding; which oaths shall be filed and preserved in the office of the said clerk."

The defendants prove that no oath subscribed by Peal, taken since his last appointment, is on file in the clerk's office, and that fact, together with his silence on the subject, may justify the assumption that none was taken. It is not clear that the section applies to an appointment under the act of 1886, but whether so or not, it is directory only and imposes no forfeiture. Peal *did* enter on the duties of his office, and can take the oath at any time. Possession, under claim of right, is all that he needs to enable him to resist an attempt to remove him, except upon charges preferred.

The judgment in Peal's case will be reversed, and the record will be remitted, with directions to set aside the action brought up by this writ.

The judgment in the O'Rourke and Reilly case will be affirmed.

Peal case—
*For affirmance*—THE CHIEF JUSTICE.  1.

*For reversal*—THE CHANCELLOR, DIXON, GARRISON, GUMMERE, COLLINS, GARRETSON, HENDRICKSON, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM.  13.

O'Rourke case—
*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, GUMMERE, COLLINS, GARRETSON, HENDRICKSON, BOGERT, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM. 14.

*For reversal*—None.