BELAVAL, PETITIONER AND APPELLANT, *v.* TODD, MAYOR OF SAN JUAN, RESPONDENT AND APPELLEE.

APPEAL from the District Court of San Juan, Section 1, in a Proceeding for Execution in Mandamus.

No. 1396.—Decided June 1, 1916.

MUNICIPAL EMPLOYEE—SUPERINTENDENT OF HOSPITAL.—A superintendent of a municipal hospital appointed by the mayor is an employee within the meaning of section 32 of the Municipalities Act.

ID.—REMOVAL OF EMPLOYEE—NOTICE AND HEARING.—The words ''for just cause'' used in section 32 of the Municipalities Act limit the power of a mayor to remove arbitrarily the employees appointed by him and suggest the necessity of a proceeding involving previous notice to and a hearing of the employee to be removed.

ID.—MODERN DEMOCRACY—ADMINISTRATIVE OFFICERS.—The tendency of modern democracies is to insure more and more the intelligent intervention of the people in public affairs and at the same time to create an administrative machine composed of honest, active and competent men who may have no fear of removal so long as they faithfully discharge the duties of the office to which they have been appointed or elected.

ID.—MUNICIPAL COUNCIL.—Under section 25, paragraph 15, of the Municipalities Act, the power to create offices clearly rests in the municipal councils and, as a logical consequence, the power to abolish them.

ID.—ID.—ABOLITION OF OFFICE.—When a person is appointed to an office created by a municipal council, such person is entitled to discharge the duties thereof in accordance with the law as long as the office exists; but if the office is abolished, the appointment is *ipso facto* revoked and the appointee has no claim against the municipality.

ID.—TERM OF OFFICE—TERM OF MAYOR.—Municipal employees of Porto Rico appointed under section 32 of the Municipalities Act do not cease automatically in the discharge of their duties at the end of the term of the mayor who appointed them, but continue in office so long as the same exists and they faithfully discharge the duties thereof.

MAYOR—RE-ELECTION—SUBSTITUTION.—The fact that the same person is re-elected to the office of mayor does not imply that it is the same mayor; but when this occurs it is not necessary to make a formal substitution of one person for another in the action.

The facts are stated in the opinion.

*Messrs. J. Henri Brown, Eduardo Acuña and Horacio S. Belaval* for the appellant.

*Messrs. Ramón Falcón and Adrián Agosto* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a certain order of the District Court of San Juan, Section 1, refusing to issue a peremptory writ of mandamus.

Dr. José S. Belaval Veve petitioned the said court for a peremptory writ of mandamus directed to Robert H. Todd, mayor of San Juan, requiring the respondent to reinstate the petitioner in his office of superintendent of the municipal hospitals of San Juan, from which he had removed him unlawfully. The case went to trial and on May 22, 1914, the district court rendered judgment "ordering the respondent to reinstate Dr. José S. Belaval in his office, with the costs against the said respondent." On appeal, the said judgment was affirmed by this court on June 26, 1915. *Belaval* v. *Todd*, 22 P. R. R. 590.

The case having been remanded to the district court of its origin, the petitioner moved for execution of the judgment and on October 7, 1915, the court refused "to issue the peremptory writ of mandamus because the term of office for which Dr. Belaval was appointed had expired." Thereupon the petitioner took the present appeal, assigning the following two errors:

"(a) The District Court of San Juan, Section 1, committed a grave error in entering its order of October 7, instant, refusing to issue the peremptory writ of mandamus, because the legal grounds on which it is based are absolutely inapplicable to this case, even by analogy; but, on the contrary, they are in conflict with the very law invoked and especially with the judgment of this court affirming that of the said lower court.

"(b) That the court also erred, because even on the hypothesis that the order appealed from conforms to law, recognizing as it does that Dr. Belaval was illegally deprived of his office until January 11, 1915, it does not even order the execution of the judgment as to the payment due to the petitioner for the salary and emoluments of which he was deprived during the time the office was unjustly withheld from him."

Let us examine the first error. The grounds on which the district court based the order appealed from are given by the said court as follows:

"The petitioner has filed a motion in this case for an order for the execution of the judgment rendered by this court on May 22, 1914, and affirmed by the Supreme Court on June 26 of the present year. The petitioner asks for the issuance of a peremptory writ of mandamus directed to Robert H. Todd, mayor of the municipality of San Juan, commanding the reinstatement in office of Dr. José S. Belaval y Veve, as prayed for in the petition.

"When the court rendered its decision granting the writ of mandamus for the reinstatement of Dr. Belaval in the office from which he had been removed unlawfully, he was duly discharging the duties of the office within the term for which he was appointed. The court takes judicial notice of the fact that on November 4, 1914, elections for the offices of mayor, councillors and members of the schoolboard were held in the city of San Juan. The officers elected,

including Robert H. Todd as mayor of San Juan, took possession of their offices on January 11, 1915.

"We are of the opinion that Dr. Belaval's term of office has expired according to law, his illegal removal from office having continued up to the end of his term.

"Until that moment he was improperly deprived of his office, but from the instant when the term for which he was appointed expired, his removal ceased to be illegal, because the petitioner had no right to continue in the discharge of his duties against the will of the mayor.

"Therefore, in view of sections 7, 14, 82, 83, 86, and particularly section 32 of the Municipal Law, the court overrules the motion for a peremptory writ of mandamus because the term for which Dr. Belaval was appointed has expired."

Therefore, the material question in the present case is the duration of the term of office of Dr. Belaval.

The municipality of San Juan, of which the respondent was and is the mayor, is governed by the Municipal Law of March 9, 1906, which was subsequently amended on various occasions, as may be seen from the Compilation of the Revised Statutes and Codes of Porto Rico, pages 344 *et seq.* That law created the offices of Secretary, Treasurer, Comptroller, Inspector of Health and Charities and Inspector of Public Works, and provides that the persons appointed by the mayor to fill the said offices shall hold them for the term for which the mayor who appointed them may have been elected or appointed; and section 32 further provides that the mayor shall appoint all employees of the municipality whose appointments are not otherwise provided for in the said act, as authorized by the appropriations of the budget. Deputy inspectors of sanitation are also provided for, but their status as to the time they shall hold office is not perfectly defined.

Therefore, it is of great importance to fix the character of the office held by Dr. Belaval. The pleadings show that he was appointed by the respondent as superintendent of the municipal hospitals of San Juan. The said office bears

a close relation to the Department of Health and Charities, and, therefore, the petitioner might be termed, perhaps, a deputy inspector within the meaning of section 44 of the act.

However, although Dr. Belaval is a physician and although the hospitals are supported by the municipality, the nature of the office of the said physician really seems in fact to be purely administrative. The respondent himself in his brief, after drawing a distinction between municipal officials and employees and contending that only the Secretary, the Comptroller, the Inspector of Health and Charities and the Inspector of Public Works are officials, expresses himself literally as follows:

"That is to say, the former, being specified in the Act, are, juridically speaking, *officials,* and the latter, not being so specified, are *employees.* Within the latter category is included the petitioner herein, Dr. José S. Belaval y Veve."

This question being settled, let us start from the basis that the petitioner is an employee of the municipality of San Juan and was appointed in accordance with section 32 of the Municipal Law in force, which section, as amended by the Act of March 10, 1910, reads as follows:

"The *alcalde* shall appoint all employees of the municipality whose appointments are not otherwise provided for in this Act, as authorized by the appropriations of the budget, and it shall be his duty to see that they properly perform their duties. The *alcalde* may, for just cause, remove all officers and employees appointed by him alone, or appointed by him with the advice and consent of the municipal council; *Provided, however,* That the municipal comptroller or municipal secretary performing the duties of comptroller shall not be removed except by and with the consent of the municipal council after charges shall have been preferred in writing by the *alcalde* to the council and after a term of two days shall have been given the comptroller to submit to the council a written answer to such charges."

In construing the said section this court held that the words "for just cause," used therein by the Legislature, limited the power of the mayor to remove at will the em-

ployees appointed by him and impliedly required a proceeding at which the employee to be removed should be heard after due notice. In the opinion of the court delivered by Mr. Justice Wolf, he cited, among other authorities, the case of *State ex rel. Hitchcock* v. *Hewitt,* 16 L. R. A. 413. In that case the Supreme Court of South Dakota, through Mr. Chief Justice Kellam, summarizes the history of the jurisprudence on the subject since 1892 and cites interesting cases in a clear and concise manner. For the benefit of our courts and attorneys we quote freely from the said opinion. From the year 1892 the jurisprudence has continued developing along the same lines. The tendency of modern democracies is to insure more and more the intelligent intervention of the people in public affairs while at the same time creating an administrative machine composed of honest, active and competent men who may feel safe in their offices so long as they faithfully discharge the duties for which they have been appointed or elected.

"The *Ramshay Case,* 18 Q. B. 173," says Mr. Chief Justice Kellam, "was one in which the Lord Chancellor undertook to summarily remove a judge of a county court under a statute authorizing him to make such removal for inability or misbehavior. The court, by Lord Campbell, Ch. J., said: 'The chancellor has authority to remove a judge of a county court only on the implied condition, prescribed by the principles of eternal justice, that he hears the party accused.'

"The case of *Reg.* v. *Canterbury,* 1 El. & El. 545, arose under an Act of Parliament providing that a curate whose license had been revoked by the bishop might appeal to the archbishop, who should confirm or annul such revocation as to him should appear just and proper. An appeal was taken to the archbishop, who, without giving the appellant an opportunity to be heard, confirmed the revocation. The court said: 'No doubt the bishop acted most conscientiously, and with a sincere desire to promote the interests of the Church, but we all think he has taken an erroneous view of the law. He was bound to hear the appellant, and he has not heard him. It is one of the first principles of justice that no man should be condemned without being heard.'

"In *Williams* v. *Bagot,* 3 Barn. & C. 785, Mr. Justice Bayley said: 'It is contrary to common justice that a party should be concluded unheard.' *Capel* v. *Child,* 2 Cromp. & J. 558, is in the same line. The court said: 'A party has a right to be heard, for the purpose of explaining his conduct.' The same views are expressed in *Baggs' Case,* 11 Coke, 98, and in *Gaskin's Case,* 8 T. R. 209. In this country, while the adjudications of the courts have not been absolutely uniform, they clearly preponderate in the same direction as the English authorities already cited.

"In his work on Municipal Corporations, (vol. 1, 4th ed., sec. 250), Judge Dillon expresses the following opinion: 'When an officer is appointed during pleasure, or where the power of removal is discretionary, the power to remove may be exercised without notice or hearing. But when the appointment is during good behavior, or where the removal can only be for certain specified causes, the power of removal cannot * * * be exercised unless there be a formulated charge against the officer, notice to him of the accusation and a hearing of the evidence in support of the charge, and an opportunity given to the party of making defense.'

"In the early case of *Page* v. *Hardin,* 8 B. Mon. 648, where the Governor of Kentucky undertook to decide that the secretary of state had abandoned his office, the tenure of which was good behavior during the term for which he was appointed, and commissioned another person in his place, no notice was given to Hardin, the incumbent, previous to the action of the Governor. Chief Justice Marshall, in delivering the opinion of the court, said: 'The secretary being removable for breach of good behavior only, the ascertainment of the breach must precede the removal. In other words, the officer must be convicted of misbehavior in office, and we shall not argue to prove that, in a government of laws, a conviction whereby an individual may be deprived of valuable rights and interests, and may moreover be seriously affected in his good name and standing, implies a charge, and trial and judgment, with the opportunity of defense and proof.'

"In *Com.* v. *Slifer,* 25 Pa. 23, 64 Am. Dec. 680, an adjutant-general had been appointed for a specified term, subject, however, to a statute providing that 'whenever in the opinion of the governor, the adjutant-general fails and neglects faithfully to perform the duties of his office, the governor shall remove him from office.' During such term the governor appointed another to the office and this action was an application by the first appointee for a mandamus to compel payment of his salary. No notice was given to him of

any claimed neglect of duty prior to the appointment of his suc-
cessor, and the court said: 'We are unwilling to believe the gov-
ernor intended without cause to remove an officer appointed for a
term of years, before the term had expired. That he possessed the
power of removal is conceded, but the power is to be exercised upon
cause shown.   It exists only where the officer "fails and neglects
faithfully to perform the duties of his office." It is true that the
executive is made the judge, and that his opinion or judgment is
conclusive as far as relates to the question of removal.   But that
judgment is not to be pronounced without notice, without any charge
or specification, and without any opportunity given to the officer to
make his defense.   The reputation and the right of the incumbent
to the office for the term specified in his commission are involved,
and he has a right to know the accusation, and to be heard in his
defense.' The same court reiterated the same rule as to necessity
for notice, where the removal could only be made for cause, in
*Field* v. *Com.,* 32 Pa. 478.

"In *State* v. *St. Louis,* 90 Mo. 19, 6 West. Rep. 464, the general
rule as to removal of public officers is thus stated: 'Where an officer
is appointed during pleasure, or where the power of removal is dis-
cretionary, the power to remove may be exercised without notice or
hearing.   But where the appointment is during good behavior, or
where the removal must be for cause, the power of removal can only
be exercised when charges are made against the accused, and after
notice, with a reasonable opportunity to be heard before the officer
or body having the power to remove.' And again, in the same
opinion, the court says: 'When the removal is not discretionary, but
must be for a cause, as is the case here, and nothing is said as to
the procedure, a specification of the charges, notice, and an oppor-
tunity to be heard are essential.'

"*Dullam* v. *State,* 53 Mich. 392, 51 Am. Rep. 128, was a case
where the governor undertook to summarily remove without notice
one of the trustees of the state institution for educating the deaf
and dumb, on the ground of official misconduct and habitual neglect
of duty, as stated in a paper filed with the secretary of state, and
served on such officer after such removal.   A statute authorized the
governor to remove certain officers, including the one involved, for
'official misconduct, or habitual or wilful neglect of duty.' The
constitution of the state also imposed upon the governor the duty
of examining into the condition and administration of public officers,

and authorized him to remove any such officer for gross neglect of duty, or for corrupt conduct in office, or other misfeasance or malfeasance therein. The question was whether the governor had legally exercised the power of removal. While the court held that the power of determining whether any of the specified causes of removal existed or not was judicial in its nature, still such power properly belonged to and might be exercised by the governor because expressly conferred upon him by the constitution; but it was further distinctly held that such power could not be properly exercised without notice to the officer to be proceeded against, and an opportunity given him to be heard in his defense. The court said: 'Unless it is the manifest intention of the section under consideration that the proceedings should be *ex parte*, as well as summary, a removal without charges, notice, and an opportunity for defense could not be upheld. * * * The officer is entitled to know the particular acts and neglect of duty, or corrupt conduct, or other acts relied upon as constituting malfeasance or misfeasance in office. And he is entitled to a reasonable notice of the place and time when an opportunity will be given him for a hearing, and he has a right to produce proof on such hearing.'

"*Ham* v. *Boston*, 142 Mass. 90, 2 New Eng. Rep. 642, declares the same rule. Under a statute authorizing the board of police to remove any officer or member of the department for cause, the court held that such power could not be exercised by the board without assigning a cause for such removal, and giving to such officer or member an opportunity to be heard thereon. The court granted the mandamus restoring the petitioner to office, on the ground that 'he was improperly removed, no hearing having been accorded him.'

"In the recent case of *Denver* v. *Darrow*, 13 Colo. 460, the court held that, where an alderman had been elected for two years, and had qualified, the board of aldermen, which by law was made the sole judge of the qualifications of its members, could not remove such incumbent from office, upon the ground of disqualification, without notice to him, and an opportunity afforded him to make defense against such charge. The same rule, requiring notice and investigation preliminary to the valid exercise of the power of removal for cause, was maintained or recognized in the following cases: *State* v. *Bryce*, 7 Ohio, pt. 2, 82; *Carter* v. *Durango City Council* (Colo.), 27 Pac. Rep. 1057; *Hallgren* v. *Campbell*, 82 Mich. 255, 9 L. R. A. 408; *Murdock* v. *Phillips Academy*, 12 Pick. 244." 16 L. R. A. 415.

So says the Supreme Court of South Dakota.

In harmony with the spirit of the jurisprudence cited, this court, in the said case of *Belaval* v. *Todd, supra,* construed the words used by the Legislature in section 32 of the Municipal Law in the sense indicated, and it was clearly expressed in the opinion of the court to which we have already referred.

Now, should the said procedure be followed only during the year in which the municipal budget appropriating the amount necessary to pay the employee's salary is in force, or during the term of office of the mayor who appointed him, as maintained by the appellee, or is it also binding upon the mayor who succeeds the one who made the appointment, as contended by the appellant?

Under the Municipal Law in force (sec. 25, par. 15,) the municipal councils are authorized to determine the number of municipal employees, define their duties and fix their salaries. And according to that same act (sec. 83), the municipal council is required to frame a budget of receipts and expenditures.

The office of the petitioner was created by the municipal council, which fixed its salary in the budget for the fiscal year 1913–14, which is the year in which he petitioned for the writ of mandamus under consideration. It is not shown that the office has been abolished or that the appropriation of the necessary amount for the payment of the salary has been discontinued in the budget.

As the council manifestly has the power to create offices, it logically follows that it also has the power to abolish them. When an office is created the salary of the incumbent is generally included in successive annual budgets and may be increased or decreased by the council annually in the absence of any statutory restriction.

The construction which this court places upon section 32 to the effect that when an employee is appointed he cannot be removed except for just cause, after notice and a hearing,

in nowise affects the power of municipal councils to abolish offices created by them. If a person is appointed to an office created by the council, he is entitled by law to discharge the duties of that office during its existence; but if the office is abolished, the appointment ceases and the appointee has no claim whatever against the municipality. This question, raised by the appellee in his brief, deflects from its own center the legal problem propounded by the appellant. That problem, reduced to its proper limits, is whether the employees of the municipalities of Porto Rico appointed under the aforesaid section automatically cease to hold office at the expiration of the term of office of the mayor who appointed them, or continue to hold their offices during the existence of the same, so long as they faithfully perform the duties thereof.

Neither of the parties has cited, nor have we been able to find, any case which definitely decides this question.

We have found several cases establishing the doctrine that a municipal council cannot of itself abridge the powers of its successor. For instance, an ordinance by which an employee subject under the law to be appointed or removed at will is appointed for a term exceeding the life of the council passing the ordinance, would be invalid. Such an ordinance would be regarded as an encroachment upon the power of appointment of the succeeding council. See the cases of *Egan* v. *St. Paul City et al.*, 57 Minn. Rep. 1; *Mathis* v. *Rose*, 44 Atl. 875; *Bohan* v. *Weehawken Tp.*, 47 Atl. 446; and *Peal* v. *Mayor, etc., of City of Newark*, 49 Atl. 468.

However, this is not a case of a municipal ordinance but of the interpretation of an act of the Legislative Assembly, which has the power to regulate the charters of the municipalities, and, therefore, the jurisprudence cited is inapplicable.

We have already held that the intention of the Legislature, as expressed in section 32 of the Municipal Law, was that no employee, after appointment, should be removed ex-

cept after notice, a hearing, and for just cause. Should we now limit that doctrine to the term of office of the mayor who appointed the employee, or should we extend that term to successive municipal administrations?

There is no provision of law which prescribes that municipal employees shall cease to hold office upon the expiration of the term of the mayor who appointed them. See Dillon on Municipal Corporations, Vol. I (5th ed.), § 412 (220). When the Legislature desired to fix a specific term it did so clearly, as in the cases of the Secretary, the Comptroller and the Treasurer. If the Legislature had intended that municipal employees should be removable at will by the mayors, following the precedents clearly established in American jurisprudence it would not have used the words "for just cause" in section 32 of the Municipal Law as it did.

These words have a meaning. They reveal a manifest intention. They show that for the good of the municipal administration and therefore of the people, the Legislature decided to organize in the municipalities of Porto Rico a staff of employees who might hold office under the firm conviction that the permanency of their positions depended upon the faithful performance of their duties.

Prior to the year 1906 municipal employees were removable at will by those who appointed them, but even then such will had to be manifested in due form in order that the incumbent should be regarded as removed. Otherwise the employee continued indefinitely in the exercise of his functions. The law now requires a just cause for removal and until the removal is made for just cause, which involves previous notice and a hearing, the employee must be considered to continue indefinitely in the discharge of his duties. It is a case of a certain kind of contract for services which prior to 1906 terminated at the option of the employer and subsequent to the said year, also at the option of the employer, but for just cause.

The provision for the office of mayor and the appointment by him at the beginning of his administration of the actual heads of the different municipal departments is sufficient, we think, to enable the political party winning the elections held in accordance with law to carry out its program. It should not be presumed that the subordinate employees will necessarily impede the development of that program because their political ideas do not harmonize with those of their superiors. If in the expression and exercise of such ideas the employees should demonstrate such hostility and disloyalty as would imply the impossibility of efficient co-operation in the discharge of their public duties with the administration of which they form a part, that would be the proper time to take such fact into consideration for the purpose of deciding whether the employees should continue to hold office or not.

Therefore, we fail to see any reason to force us to construe the law in the manner contended for by the appellee.

For a consideration of the history of this question and the early and modern tendencies in regard thereto, we would recommend reference to the Cyclopedia of American Government (1914), Vol. I, p. 667, and Vol. III, pp. 177, 372 and 517. In this opinion we shall confine ourselves to a reproduction of the second column on page 179 of Volume III of the said work, which reads as follows:

"There are two recent movements which affect vitally the power of removal. One is the demand that chief executives shall be made responsible for their subordinates and able to control them; the second, that removals for purely partisan reasons shall not destroy the efficiency of the civil service. These are a recognition of the fact that governmental efficiency requires concentration of administrative power and responsibility. (1) Public sentiment has gradually been securing the enactment into law of this demand for greater administrative centralization in our states and cities. A generation ago, the attempt was made, by restricting the power of removal, to prevent the continued demoralization of the civil service through arbitrary, partisan removals; to-day the desire is to separate political positions

from those of a clerical (*i. e.*, purely administrative) character, giving the governor and mayor fuller control over their political subordinates, in removals as well as appointments, and relieving the clerical force from the danger of arbitrary, partisan changes with each change of chief executive. As yet, the discrimination between political and clerical positions is by no means complete or perfect, even in the national civil service, but the great changes of the last generation promise even greater discrimination and more perfect administrative organization in the future. (2) Even slower has been the change toward giving governors and mayors responsible control of their political subordinates, through the right of removal. The reason for this is the public fear that the power of removal will be abused, because the right of removal may be an excuse for the distribution of spoils. Public-spirited and far-sighted Presidents, governors and mayors, anxious to make their work effective, have been wielding the power of removal, so far as it has been entrusted to them, for the mutual benefit of their administrations and the public. Gradually public sentiment is demanding that other executives shall use the power of removal in the same way. In time the public sentiment of the voters and the public spirit of the executives will correct and remove most abuses that have accompanied the power of removal. When that time comes, the last objection having been taken away, arbitrary restrictions over the chief executive's full power to remove his political subordinates will disappear." III Cyclopedia of American Government, 179.

In view of all the foregoing, we are forced to the conclusion that the distinguished trial court erred in refusing to execute the judgment which it had rendered previously in this case.

We agree with the appellee as to the fact that the reelection of the same person to the office of mayor of the city of San Juan does not signify that the same mayor is referred to. We accept the doctrine laid down in the California cases cited by the appellee, *Hubert* v. *Mendheim,* 64 Cal. 213, 220, and *Thurston* v. *Clark,* 107 Cal. 285, 288; but it cannot be denied that the fact that in this case the same person succeeded himself to the office of mayor eliminated the necessity of formally substituting one person for another in the action.

As to the second error assigned by the appellant in his brief, we have no data within this appeal upon which to decide the same in full accord with justice.

Dr. Belaval's petition for the writ of mandamus is not included in the transcript of the record. The judgment of the district court, which was affirmed by this tribunal, was silent regarding the payment of the salary which the petitioner should receive. Nor does the order appealed from contain any ruling on this question.

In view of the foregoing we think it better to leave this question to the trial court which has all the data in its possession necessary to decide the same in accordance with the facts and the law.

Before concluding this opinion we wish to say that there is nothing in the transcript of the record pointing to a wilful and arbitrary procedure on the part of the respondent. We do not know whether in reality there was any just cause for the removal, and everything seems to indicate that the mayor acted under the impression that his procedure was justified by law and by the decision of this court in the case of *Ruiz* v. *Del Valle,* 17 P. R. R. 654, which decision was distinguished by this court when it affirmed the judgment whose execution it now orders. *Belaval* v. *Todd,* 22 P. R. R. 590.

The order appealed from should be reversed and the case remanded to the court of its origin for further proceedings not inconsistent with this opinion.

*Reversed.*

Justices Wolf and Hutchison concurred.
Chief Justice Hernández and Justice Aldrey dissented.

DISSENTING OPINION OF MR. CHIEF JUSTICE HERNÁNDEZ AND MR. JUSTICE ALDREY.

The only question submitted for the decision of this court in the present appeal is whether the ruling of the District Court of San Juan, Section 1, overruling a motion for the

execution of its judgment ordering the reinstatement of the appellant, Dr. José S. Belaval, in the office from which he had been removed by Mayor Robert H. Todd, is erroneous or not. Any other question should be disregarded because it would be *obiter dicta*.

The facts in this case are as follows: Being superintendent of the municipal hospitals of San Juan, Dr. Belaval was removed from office by Mayor Todd and petitioned for a writ of mandamus to compel the mayor to reinstate him in the office, because he had been removed without having been informed of the cause of his removal. The district court granted the writ and this court, on appeal, affirmed the judgment because the petition, which was the only document we could consider due to the fact that the evidence was not submitted, did not show that the petitioner had been given notice and a hearing regarding the cause of his removal. *Belaval* v. *Todd*, 22 P. R. R. 590. Our decision having been communicated to the lower court, Dr. Belaval moved the said court for a peremptory writ of mandamus commanding his restoration to office, which motion the said court overruled.

While these proceedings and others in certiorari were pending, the elections of November, 1914, were held in this Island and, among others, the officers to be entrusted for four years with the control of the administration of the municipalities of this Island and, therefore, the officers of the municipality of San Juan, were elected in accordance with law, Robert H. Todd being re-elected to the office of mayor of San Juan, and the persons elected took charge of their offices.

In view of these facts the question to be decided in this appeal is whether Dr. Belaval, notwithstanding the fact that the term of office of the municipal administration during which he was appointed by Mayor Todd has expired, has the right to continue permanently in his office of superintendent of the municipal hospitals so long as the position

is provided for in the municipal budget, unless removed for just cause, or whether, upon the termination of the municipal administration by operation of law, his right to continue in office and not to be removed without just cause also ceased.

The law provides that the mayor shall appoint all the municipal employees, subject to the approval of the municipal council in some cases; that he shall see that they properly perform their duties, and that he may remove them for just cause. As regards the secretary, comptroller, engineer of public works and inspector of health and charities, the law also provides that they shall hold office for the term for which the mayor who appointed them was elected or appointed. Therefore the right of these four officials to hold office ceases upon the election or appointment of a new mayor, and the mayor may be appointed by the Governor in case of vacancy or removal. The municipal budget makes no provision for the office of inspector of health and charities, hence we are inclined to believe that as superintendent of the hospitals Dr. Belaval performed the duties of that office and, therefore, is one of the officers whose right to office ceased when the term of office of the mayor who appointed him expired. His duties are really similar to those of the official specified in the law and are of such a character that the law necessarily requires him to be a man in whom the mayor has absolute confidence, as in the case of the other officials to whom we have referred.

But if this were not so, it nevertheless follows that if his term of office does not expire with that of the mayor who appointed him, his right to the office would cease, as that of the other municipal employees, upon the termination by operation of law of the municipal administration during which he was appointed by the mayor.

The law is silent as to the time these employees are entitled to continue in office, but when we consider that the law provides that the voters of a municipality shall elect their officers every four years, we are forced to the conclusion that

the right of the municipal employees to hold their offices terminates each four years and that the condition that they shall not be removed without just cause continues only during these four years; first, because we do not believe that the municipal administration whose tenure of office is limited by law to four years can appoint employees for a period extending beyond its own legal existence; and, second, the law requiring that the voters shall elect the persons to be entrusted with the control of the municipal administration each four years, thus giving other political and economic ideas an opportunity to triumph, we cannot conceive how they can be required to develop their political and economic program with the aid of employees who do not support them because of their divergence of ideas. The law allows political and economic ideas to triumph at the polls and it must be presumed that it also permits the consequences. And it cannot be said that the mayor and the municipal administration can carry out the policies of the electorate through the heads of the different departments, for if they cannot rely upon loyal subordinates they will find it very difficult to carry out their program and be tempted to adopt the dangerous and illegal procedure of simulating causes of removal.

The doctrine laid down in the majority opinion that with the exception of the four officials specified all the employees hold office permanently unless removed for just cause, has the effect of creating for them a right which was denied them by the Legislature in excluding them from the classified civil service, which right is recognized solely upon their appointment by the mayor and without proving their qualifications, as is required of employees included in the civil service.

It is true that two conflicting theories are advanced regarding the advantages of the permanency in office of the employees and that many reasons are adduced for and against that theory; but as yet, according to our laws, permanency

in office attaches only to classified civil-service employees, among whom municipal employees are not included.

For the foregoing reasons we are of the opinion that the decision appealed from should be affirmed.