BELAVAL, DEMANDANTE Y APELANTE, *v.* TODD, ALCALDE DE SAN JUAN, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en un procedimiento de ejecución de sentencia en recurso de *mandamus*.

No. 1396.—Resuelto en junio 1, 1916.

EMPLEADOS MUNICIPALES—DIRECTOR DE HOSPITALES MUNICIPALES.—El director de un hospital municipal nombrado por el alcalde, es un empleado de acuerdo con la sección 32 de la Ley Municipal.

ID.—DESTITUCIÓN DE EMPLEADOS—JUSTA CAUSA—NOTIFICACIÓN Y AUDIENCIA.— Las palabras ''por justa causa'' empleadas en la sección 32 de la Ley Municipal, limitan el poder del alcalde para destituir a su arbitrio a los empleados por él mismo nombrados e implican la necesidad de un procedimiento que requiere la previa notificación y audiencia del empleado a quien se trata de destituir.

ID.—TENDENCIA DE LAS MODERNAS DEMOCRACIAS.—La tendencia de las modernas democracias es la de· asegurar cada vez más la inteligente intervención del pueblo en los asuntos públicos, pero creando al mismo tiempo una máquina administrativa compuesta de hombres honrados, activos y competentes que se sientan seguros en sus puestos mientras cumplan fielmente con los deberes de los cargos para los cuales fueron nombrados o elegidos.

ID.—FACULTADES DEL CONCEJO MUNICIPAL.—De acuerdo con la ley municipal vigente (sección 25, párrafo 15), la facultad de crear los cargos reside claramente en el concejo municipal y como consecuencia lógica reside también en él la facultad de abolirlos.

ID.—ABOLICIÓN DEL EMPLEO POR EL CONCEJO MUNICIPAL—DERECHOS DEL EMPLEADO.—Cuando una persona es nombrada para un cargo creado por el concejo municipal, esa persona tiene derecho a desempeñar el mismo de acuerdo con la ley mientras subsista, pero si el empleo es debidamente abolido, cae por su base el nombramiento y el nombrado no tiene derecho alguno en contra de la municipalidad.

ID.—TERMINACIÓN DE SUS EMPLEOS—ALCALDE MUNICIPAL.—Los empleados de los
municipios de Puerto Rico nombrados de acuerdo con el artículo 32 de la
Ley Municipal, no terminan automáticamente en sus funciones el día que
cesa el alcalde que los nombra, sino que continúan en sus puestos mientras
exista el cargo y mientras cumplan fielmente con los deberes del mismo.

MANDAMUS—ALCALDE MUNICIPAL—ELECCIONES—SUSTITUCIÓN DE PARTES.—La
circunstancia de haber sido elegida una misma persona para el cargo de
alcalde de un municipio, no implica que se trate de un mismo alcalde pero
cuando esto ocurre no es necesaria la formal sustitución en el pleito de una
persona por otra.

Los hechos están expresados en la opinión.

Abogados del peticionario: *Sres. J. Henri Brown, Eduardo Acuña y Horacio S. Belaval.*

Abogados del demandado: *Sres. Ramón Falcón y Adrián Agosto.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra cierta orden de la Corte de Distrito de San Juan, Sección 1ª., negando la expedición de un auto perentorio de *mandamus.*

En la expresada corte se archivó por el Dr. José S. Belaval Veve una petición en solicitud de un auto perentorio de *mandamus* dirigido contra Roberto H. Todd, Alcalde de San Juan, a los efectos de que el demandado repusiera al demandante en el cargo de director de los hospitales municipales de cuyo ejercicio le había privado ilegalmente. Tramitado el pleito, la corte de distrito, el 22 de mayo de 1914, dictó sentencia "ordenándose al demandado la restitución en su cargo al Dr. José S. Belaval, con imposición de las costas al referido demandado." Apelada esa sentencia, fué confirmada por esta Corte Suprema, el 26 de junio de 1915. *Belaval v. Todd,* 22 D. P. R. 633.

Devuelto el caso a la corte de distrito de su origen, el demandante solicitó el cumplimiento de la sentencia y la corte, el 7 de octubre de 1915, declaró no haber lugar "a expedir el auto perentorio de *mandamus* que se solicita, por haber expirado en la actualidad el cargo para que fué nom-

brado el Dr. Belaval.'' El demandante entonces interpuso el presente recurso de apelación, alegando la comisión de dos errores, a saber:

''(*a*) La Corte de Distrito de San Juan, Sección Primera, cometió grave error al dictar su orden de 7 de octubre corriente, denegando la expedición del auto perentorio de *mandamus,* porque sus fundamentos legales carecen absolutamente de aplicación a este caso, y aun de analogía con él; y, por el contrario, están en oposición con la misma ley invocada, y especialmente con la sentencia de esta Corte Suprema confirmatoria de la citada inferior.

''(*b*) Cometió igualmente error, porque, aun en la hipótesis de que la orden apelada se ajustase a la ley, reconociendo como reconoce que el Dr. Delaval estuvo ilegalmente privado de su cargo hasta el 11 de enero de 1915, no ordena siquiera la ejecución de la sentencia en cuanto al pago debido al peticionario por los sueldos y emolumentos de que estuvo privado durante el tiempo que declara la destitución injusta.''

Examinemos el primer error. Los fundamentos que tuvo la corte de distrito para dictar la resolución apelada, se consignaron por la misma corte en la siguiente forma:

''La parte demandante ha presentado una moción en el presente caso solicitando de la corte se sirva ordenar la ejecución de la sentencia dictada por este tribunal en 22 de mayo de 1914 y confirmada por el Tribunal Supremo en 26 de junio de este año. Solicita el demandante la expedición de un auto perentorio de *mandamus* contra Roberto H. Todd, Alcalde del Municipio de San Juan, ordenando la reposición en su puesto del Dr. José S. Belaval y Veve, de acuerdo con lo solicitado en la demanda.

''Cuando dictamos nosotros nuestra resolución decretando la expedición de un auto de *mandamus* para que se restituyera en su cargo al Dr. Belaval, ilegalmente destituído, este funcionario estaba debidamente desempeñando su puesto dentro del término para que fué nombrado. La corte tiene conocimiento judicial de que en 4 de noviembre de 1914 se celebraron elecciones en la ciudad de San Juan para los cargos de alcalde, concejales y miembros de la junta escolar. Los funcionarios elegidos, entre los cuales se encuentra Roberto H. Todd, como Alcalde de San Juan, tomaron posesión de sus puestos en 11 de enero de 1915.

''A nuestro juicio el cargo del Dr. Belaval ha expirado ya de

acuerdo con la ley, durando hasta la fecha en que finalizó su término, la destitución ilegal del cargo que desempeñaba.

"Hasta este momento estuvo indebidamente destituído de su cargo, pero desde el instante en que expiró el término por el que fué nombrado, la destitución dejó de ser ilegal, por no tener derecho el peticionario a seguir desempeñando sus funciones contra la voluntad del alcalde.

"Por tanto, la corte, vistas las secciones 7, 14, 82, 83, 86, y sobre todo la 32 de la Ley Municipal, resuelve que no ha lugar a expedir el auto perentorio de *mandamus* que se solicita por haber expirado en la actualidad el cargo para que fué nombrado el Dr. Belaval."

Está envuelta, pues, en el presente caso la cuestión esencial de la duración del empleo desempeñado por el Dr. Belaval.

El municipio de San Juan, del cual era y es alcalde el demandado, se rige por la Ley Municipal de marzo 9, 1906, modificada posteriormente en varias ocasiones, según puede verse en la Compilación de los Estatutos Revisados y Códigos de Puerto Rico, página 368 y siguientes. Crea esa ley los cargos de secretario, tesorero, contador, inspector de beneficencia y sanidad e inspector de obras públicas y prescribe que las personas que el alcalde nombrare para desempeñarlos lo serán por el término para el cual el alcalde que los hubiere nombrado hubiere sido elegido o nombrado, y dispone además, en su sección 32, que el alcalde nombrará todos los empleados del municipio cuyos nombramientos no se proveyeren de otro modo en la ley y que estuvieren autorizados por las asignaciones del presupuesto. Existen otros empleados, los inspectores auxiliares de sanidad, cuyo *status* con respecto a la duración de su empleo no está perfectamente definido.

Es pues, de gran importancia fijar la naturaleza del cargo desempeñado por el Dr. Belaval. Las alegaciones demuestran que fué nombrado por el demandado director de los hospitales municipales de San Juan. Dicho cargo guarda estrecha relación con el ramo de sanidad y beneficencia y en tal virtud podría tal vez calificarse al peticionario como a un

inspector auxiliar, dentro del significado de la sección 44 de la ley.

Sin embargo, aunque el Dr. Belaval es un médico, y aunque los hospitales están sostenidos por la beneficencia municipal, la naturaleza del cargo de dicho doctor parece ser en realidad de verdad puramente administrativa. La misma parte demandada en su alegato, después de distinguir entre oficiales y empleados municipales y de sostener que son oficiales únicamente el secretario, el contador, el tesorero, el inspector de beneficencia y sanidad y el inspector de obras públicas, se expresa textualmente así:

"Es decir, que los primeros, por estar especificados en la ley, son, hablando jurídicamente, *oficiales*, y los segundos por no estarlo son *empleados*. Dentro de estos últimos se encuentra comprendido el peticionario en este procedimiento, Dr. José S. Belaval y Veve."

Aclarada esta cuestión, partiremos de la base de que el demandante es un empleado del municipio de San Juan y fué nombrado de acuerdo con la sección 32 de la Ley Municipal vigente, que, copiada a la letra tal como quedó enmendada en 10 de marzo de 1910, dice así:

"El alcalde nombrará todos los empleados del municipio cuyos nombramientos no se proveyeren de otro modo en esta ley y que estuvieren autorizados por las asignaciones del presupuesto y deberá ver que cumplan debidamente con sus obligaciones. El alcalde podrá, por justa causa, destituir a todos los funcionarios y empleados nombrados por él solamente, o nombrados por él con la anuencia y consentimiento del concejo municipal; *Disponiéndose, sin embargo,* que el contador municipal o el secretario municipal en funciones de contador no podrá ser destituído sin el consentimiento del concejo municipal después de haber el alcalde formulado cargos por escrito y presentádolos al concejo, y después de haberse dado al contador un período de dos días para presentar al concejo una contestación a dichos cargos por escrito."

Interpretando esta Corte Suprema la sección transcrita, resolvió que las palabras "por justa causa" empleadas en ella por la Legislatura, limitaban el poder del alcalde para

destituir a su arbitrio los empleados por él mismo nombrados
e implicaban la necesidad de un procedimiento que requería
la previa notificación y audiencia del empleado a quien se
trataba de destituir.   En la opinión del tribunal emitida por
el Juez Asociado Sr. Wolf se citó como autoridad, entre otros,
el caso de *State ex rel, Hitchcock* v. *Hewitt,* reportado en
16 L. R. A. 413.   En dicho caso, la Corte Suprema de South
Dakota, por medio de su Presidente el Sr. Kellam, condensa
la historia de la jurisprudencia sobre la materia hasta el
año de 1892 citando interesantes casos en forma clara y con-
cisa.   Para ilustración de nuestros tribunales y abogados
transcribimos a continuación una gran parte de la opinión
indicada.   Después del 1892, la jurisprudencia ha continuado
desenvolviéndose en el mismo sentido.   La tendencia de las
modernas democracias es la de asegurar cada vez más la
inteligente intervención del pueblo en los asuntos públicos,
pero creando al mismo tiempo una máquina gubernativa
compuesta de hombres honrados, activos y competentes que
se sientan seguros en sus puestos mientras cumplan leal-
mente con los deberes de los cargos para los cuales fueron
nombrados o elegidos.

"El caso de Ramshay, 18 Q. B. 173—dice el Juez Presi-
dente Kellam—fué uno en que el Gran Canciller procedió a
destituir sumariamente a un juez de una corte de un condado
de acuerdo con un estatuto que le daba facultad para hacer
dicha destitución, por incapacidad o mala conducta.   La
corte, por medio del Canciller Campbell, Juez Presidente,
se expresó como sigue: 'El canciller tiene facultad para des-
tituir a un juez de una corte de condado, sujeta dicha facultad
solamente a la condición tácita prescrita por los principios
de justicia eterna de que oiga a la parte a quien se acusa.'

"El caso de *Reg.* v. *Canterbury,* 1 El. & El. 545, surgió
de una ley del Parlamento en que se disponía que un ministro
cuyo certificado había sido cancelado por el obispo podía ape-
lar al arzobispo, quien debía confirmar o anular dicha can-
celación si a su juicio lo creía justo y adecuado.   Se inter-

puso apelación al arzobispo y éste sin dar al recurrente la oportunidad de ser oído, confirmó dicha cancelación. La corte dijo: 'No hay duda alguna de que el arzobispo procedió de la manera más escrupulosa y con el verdadero deseo de favorecer los intereses de la Iglesia, pero todos creemos que ha interpretado la ley erróneamente. El tenía la obligación de oir al apelante, a quien no ha oído. Es uno de los primeros principios de justicia que ninguna persona será castigada sin ser oída.'

"En el caso de *Williams* v. *Bagot*, 3 Barn. & C. 785, el Juez Sr. Bayley dijo lo siguiente: 'Es contrario a la justicia ordinaria que se resuelva sobre los derechos de una parte sin ser oída.' El caso de *Capel* v. *Child*, 2 Cromp. & J. 558, se expresa en igual sentido. La corte dijo lo siguiente: 'Una persona tiene derecho a ser oída con el fin de explicar su conducta.' El mismo criterio se sostiene en el caso de Bagg, 11 Coke 98, y en el de Gaskin, 8 T. R. 209. Aunque en este país las sentencias de los tribunales no han sido absolutamente uniformes, claramente predominan en igual sentido que las autoridades inglesas a que ya hemos hecho referencia.

"El juez Dillon en su obra sobre Corporaciones Municipales (tomo 1, 4ª. Ed., párrafo 250) sustenta la siguiente opinión: 'Cuando un funcionario es nombrado a voluntad del que lo nombra, o cuando es discrecional la facultad de destituir, puede ejercitarse esta facultad sin que sea necesario notificar u oir al interesado. Pero si el nombramiento se hace mientras se observe buena conducta, o la separación sólo puede tener lugar por ciertas causas particulares, la facultad de destituir * * * no puede ser puesta en acción a no ser que se haya formulado un cargo contra el funcionario, notificado la queja, oída la prueba para sostener la misma y concedídole la oportunidad al perjudicado de defenderse.

"En el antiguo caso de *Page* v. *Hardin*, 8 B. Mon. 648, en el cual el Gobernador de Kentucky procedió a resolver

que el Secretario de Estado había abandonado su cargo, para conservar el cual sólo era necesario observar buena conducta durante el término del nombramiento, y que había dejado a otra persona en su lugar, no se le dió aviso alguno a Hardin, el interesado, con anterioridad a la acción tomada por el Gobernador. El Juez Presidente Sr. Marshall, al emitir la opinión del tribunal, se expresó en estos términos: 'Pudiendo ser separado el secretario solamente por dejar de observar buena conducta, antes de la destitución debe precisarse en qué consiste el incumplimiento. En otras palabras, debe encontrarse culpable al funcionario de mala conducta en los deberes de su cargo, y no entraremos en ninguna discusión para probar que en un gobierno de leyes, la declaración de culpabilidad por la cual puede privarse a una persona de derechos e intereses valiosos y sufrir además seriamente su nombre y reputación, significa que debe existir una queja, juicio y sentencia, y dársele al perjudicado la oportunidad de defenderse y presentar su prueba.'

"En el caso de *Com. v. Slifer,* 25 Pa. 23, 64 Am. Dec. 680, un ayudante general había sido nombrado por determinado tiempo, sujeto, sin embargo, a un estatuto que disponía que 'siempre que a juicio del gobernador, el ayudante general deje, o descuide cumplir fielmente con los deberes de su cargo, procederá el gobernador a destituirle de su cargo.' Durante ese tiempo el gobernador nombró a otra persona para el cargo, y la presente acción era una solicitud hecha por el primero que fué nombrado interesando un auto de *mandamus* ordenándose el pago de su sueldo. No se le dió aviso de ningún cargo por negligencia en sus deberes ocurrida con anterioridad al nombramiento de su sucesor, y dijo la corte: 'No estamos dispuestos a creer que el gobernador tuvo la intención de destituir sin causa para ello, a un funcionario nombrado por un período de tiempo, antes de expirar dicho período. Es un hecho admitido que tenía la facultad para destituir, pero ésta ha de ejercitarse cuando existe justa causa. Existe solamente si el funcionario no cumple fiel-

mente con los deberes de su cargo.' Es cierto que el ejecutivo ha quedado convertido en juez y que su opinión o sentencia es concluyente en tanto se refiere a la cuestión relativa a la destitución. Pero esa sentencia no debe dictarse sin darse aviso, o sin que exista un cargo o especificación o tener oportunidad el funcionario de formular su defensa. En esto va envuelta la reputación y el derecho del interesado al cargo por el término fijado en su nombramiento, y tiene él derecho a conocer la acusación y a ser oído en su defensa. La misma corte ratificó dicha regla respecto a la necesidad de la notificación, cuando la destitución sólo podía tener lugar por justa causa, en el caso de *Field* v. *Com.* 32 Pa. St. 478.

"En el caso de *State* v. *St. Louis,* 90 Mo. 19, 6 West. Rep. 464, la regla general referente a la separación de funcionarios públicos, ha sido expresada como sigue: 'Si un funcionario es nombrado a voluntad del que lo nombra, o cuando es discrecional la facultad de nombrar, puede ejercitarse el poder para separar sin darse aviso u oirse al funcionario. Pero si el nombramiento es mientras se observa buena conducta, o la destitución debe ser por justa causa, sólo puede ejercitarse la facultad de destituir al formularse cargos contra el acusado, y después de haber sido notificado y de habérsele dado una oportunidad razonable de ser oído ante el funcionario o cuerpo que tiene la facultad de destituir. Y también la corte en la misma opinión se expresa como sigue: 'Cuando la destitución no es discrecional sino que debe ser por justa causa, como sucede en este caso, y nada se dice en cuanto al procedimiento, es necesaria la relación de los cargos, notificación y oportunidad de ser oído.'

"El caso de *Dullam* v. *Willson,* 53 Mich. 392, 51 Am. Rep. 128, fué un caso en que el gobernador procedió a destituir sumariamente y sin notificación alguna, a uno de los síndicos de la institución del Estado dedicada a educar a los sordomudos, basándose para ello en la mala conducta oficial y negligencia habitual en el cumplimiento de su deber, según se hizo constar en un documento presentado al Secretario de

Estado y entregado al mismo después de dicha destitución.
Un estatuto autorizaba al gobernador para destituir a ciertos
funcionarios, incluyendo al funcionario de que ahora nos ocu-
pamos, por 'mala conducta oficial o por negligencia habitual
o voluntaria en el cumplimiento de su deber.' También la
Constitución del Estado imponía al gobernador el deber de
investigar el estado y administración de los funcionarios
públicos y lo autorizaba para destituir a cualquiera de tales
funcionarios por negligencia manifiesta del cumplimiento de
su deber, mala conducta en su cargo, u otra irregularidad
cualquiera o fechoría en relación con el mismo. La cuestión
era si el gobernador había ejercitado legalmente la facultad
que tenía para destituir. Aunque la corte resolvió que el
poder para determinar si existía o no alguna de las causas
especificadas para la separación era judicial por su natura-
leza, dicho poder, sin embargo, pertenecía debidamente y
podía ser ejercitado por el gobernador por haberle sido con-
ferido expresamente por la Constitución; pero se resolvió
además de modo preciso, que dicha facultad no podía ser
ejercitada debidamente sin ser notificado el funcionario con-
tra quien había de procederse, o dársele la oportunidad de
ser oído en su defensa. La corte se expresó en estos tér-
minos: 'A menos que sea la intención manifiesta del artículo
que consideramos que los procedimientos deban ser *ex parte,*
así como sumarios, no puede ser sostenida la destitución sin
formularse cargos y no se ha dado aviso ni oportunidad de
defenderse al interesado * * *.' El funcionario tiene de-
recho a conocer los actos particulares y negligencia en el
cumplimiento de su deber, o mala conducta u otros actos que
se alegan como constitutivos de la irregularidad o fechoría
cometida en el cargo. Y tiene derecho a una notificación
razonable del lugar y fecha en que ha de dársele la oportu-
nidad de ser oído, así como también el de presentar pruebas
al ser oído.

"En el caso de *Ham* v. *Boston,* 142, Mass. 90, 2 New Eng.
Rep. 642, se sienta el mismo principio. De acuerdo con un

estatuto que autorizaba a la comisión de la policía para separar a cualquier oficial o miembro del departamento por justa causa, resolvió la corte que dicha facultad no podía ejercitarla la comisión sin precisar una causa para la separación y dar a dicho oficial o miembro una oportunidad de ser oído en el asunto. La corte concedió el *mandamus* restituyendo en el cargo al peticionario, por el fundamento de 'haber sido separado indebidamente sin habérsele oído.'

"En el reciente caso de *Denver* v. *Darrow,* 13 Colo. 460, la corte resolvió que cuando un regidor había sido elegido por dos años y llenado los requisitos del cargo, la comisión de regidores, que según la ley era el único juez de las condiciones de sus miembros, no podía separar al interesado de su cargo basándose para ello en que no había llenado los requisitos, sin habérsele dado aviso ni la oportunidad de defenderse de dicho cargo. La misma regla que exige el aviso y la investigación preliminar para poderse ejercitar válidamente la facultad de separar por justa causa fué sostenida y reconocida en los siguientes casos: *State* v. *Bryce,* 7 Ohio, pt. 2, 82; *Carter* v. *Durango City Council (Colo.),* 27 Pac. Rep. 1057; *Hallgren* v. *Campbell,* 82 Mich. 255, 9 L. R. A. 408; *Murdock* v. *Phillips Academy,* 12 Pick. 244.'' 16 L. R. A. 415.

Hasta aquí la Corte Suprema de South Dakota.

De acuerdo con el espíritu de la jurisprudencia invocada, esta Corte Suprema de Puerto Rico, en el repetido caso de *Belaval* v. *Todd, supra,* interpretó las palabras usadas por la Legislatura en la sección 32 de la Ley Municipal en el sentido que ya hemos indicado y que claramente se expresó en la opinión del tribunal a que nos hemos referido anteriormente.

Ahora bien ¿dicho procedimiento debe seguirse únicamente durante el año en que esté en vigor el presupuesto municipal que consigna la cantidad necesaria para pagar el sueldo al empleado, o durante el término en que ejerza sus funciones el alcalde que lo nombrara, como sostiene el ape-

lado o es obligatorio de igual modo para los alcaldes que sucedan a aquel que nombre al empleado, como sostiene el apelante?

De acuerdo con la Ley Municipal vigente (sección 25, párrafo 15), los concejos municipales tienen facultad para fijar el número de los empleados municipales, definir sus deberes y fijar sus sueldos. Y de conformidad con esa misma ley (sección 83), anualmente el concejo municipal formulará un presupuesto de ingresos y egresos.

El cargo del peticionario fué creado por el concejo municipal y el concejo le asignó su sueldo en el presupuesto de 1913 a 1914, año económico durante el cual se presentó la solicitud de *mandamus* que estamos considerando. No consta que el cargo se haya suprimido ni que se haya dejado de asignar en presupuesto la cantidad necesaria para el pago del sueldo.

La facultad de crear los cargos reside claramente en el concejo y como consecuencia lógica reside también en él la facultad de abolirlos. Una vez creado un cargo, lo que ocurre generalmente es que en los presupuestos anuales sucesivos se consigna el sueldo que ha de percibir el que lo desempeñe, sueldo que puede aumentarse o disminuirse, a menos que exista alguna limitación legal, anualmente por el concejo.

La interpretación dada por esta corte a la sección 32 en el sentido de que una vez nombrado un empleado no puede ser destituído sino por justa causa y previa notificación y audiencia del interesado, no niega en manera alguna la facultad de los concejos municipales para abolir los cargos por ellos mismos creados. Si una persona se nombra para un cargo creado por el concejo, esa persona tiene derecho a desempeñar el empleo de acuerdo con la ley mientras el empleo subsista; pero si el empleo es abolido, cae por su base el nombramiento y el nombrado no tiene derecho alguno en contra de la municipalidad. Esta cuestión suscitada por el apelado en su alegato desvía de su propio centro el problema jurídico planteado por el apelante. Ese problema, reducido

a sus propios límites, es el de si los empleados de los municipios de Puerto Rico nombrados de acuerdo con la sección tantas veces citada, terminan automáticamente sus funciones el día en que cesa el alcalde que los nombra, o continúan desempeñando sus funciones mientras exista el cargo y mientras cumplan fielmente con los deberes del mismo.

Ninguna de las partes ha citado ni hemos podido encontrar caso alguno que resuelva de una manera concreta la cuestión planteada.

Hemos encontrado sí varios casos en los cuales se establece la doctrina de que un concejo municipal por sí mismo no puede limitar los poderes de su sucesor. Por ejemplo, que no sería válida una ordenanza en la cual a un empleado que de acuerdo con la ley podría nombrarse y destituirse sin limitación alguna, se le señalara un término mayor que el de la vida del concejo que aprobara la ordenanza. Tal ordenanza se consideraría como una invasión del poder de nombrar del sucesor. Véanse los casos de *Egan* v. *St. Paul City et al.*, 57 Minnesota Reports, 1; *Mathis* v. *Rose*, 44 Atl. 875; *Bohan* v. *Weehawken* Tp., 47 Atl. 446, y *Peal* v. *Mayor, etc., of City of Newark*, 49 Atl. 468.

Pero aquí no se trata de una ordenanza municipal, sino de la interpretación de una ley de la Asamblea Legislativa que tiene facultad para regular la constitución de los municipios, no siendo, por tanto, aplicable la jurisprudencia citada.

Ya hemos decidido que la voluntad de la Legislatura expresada en la sección 32 de la Ley Municipal fué la de que ningún empleado una vez nombrado pudiera ser destituído sin una previa notificación y audiencia y sin una justa causa para ello. ¿Debemos ahora limitar esa doctrina al período en que ejerza sus funciones el alcalde que nombre al empleado, o debemos extender ese período a sucesivas administraciones municipales?

No hay ninguna disposición en la ley que prescriba que los empleados municipales cesen al cesar el alcalde que los nombra. (Véase: 1 Municipal Corporations, Dillon, sec. 412

[220]).   Cuando el legislador quiso fijar un término, lo fijó con toda claridad como en los casos del secretario, del contador y del tesorero.   Si la legislatura hubiera deseado que los empleados municipales hubieran podido ser destituídos a su voluntad por los alcaldes, siguiendo los precedentes claramente establecidos en la jurisprudencia americana no hubiera empleado las palabras "por justa causa" que empleó en la sección 32 de la Ley Municipal.

Esas palabras tienen su significado.   Esas palabras revelan una intención manifiesta.   Esas palabras demuestran que la Legislatura se decidió por organizar en los municipios de Puerto Rico para bien de las administraciones municipales y por consiguiente del pueblo, un cuerpo de empleados que trabaje con el firme convencimiento de que en el cumplimiento de sus deberes descansa la seguridad de sus posiciones.

Con anterioridad al año de 1906, podían separarse los empleados municipales a voluntad del poder que los nombraba, pero aun así se necesitaba para que un funcionario se entendiera separado, que tal voluntad se manifestara en debida forma.   De otro modo el empleado continuaba indefinidamente en el ejercicio de sus funciones.   Hoy la ley exige justa causa para la separación y hasta que la separación no se realiza por justa causa, que significa previa notificación y audiencia, es necesario concluir que el empleado continúa indefinidamente desempeñando sus funciones.   Se trata de cierta clase de arrendamiento de servicios que con anterioridad a 1906 finalizaba a voluntad del arrendador y con posterioridad a dicho año a voluntad también del arrendador pero ejercitada por justa causa.

La provisión del cargo de alcalde y el nombramiento por éste al iniciar su administración de los verdaderos jefes de los distintos departamentos municipales, es suficiente, a nuestro juicio, para que el partido político que venza en las elecciones que se celebran de acuerdo con la ley pueda desarrollar su programa.   No debe presumirse que los empleados subalternos habrán de impedir necesariamente el desarrollo de ese

programa porque sustenten ideas políticas distintas de las de sus jefes. Si en la expresión y ejercicio de dichas ideas los empleados demostraren una hostilidad y una deslealtad que impliquen la imposibilidad de una cooperación eficiente con la administración de que forman parte en el cumplimiento de sus deberes públicos, entonces será el momento apropiado para tomar tal hecho en consideración a los efectos de decidir si los empleados deben o no continuar en sus puestos.

No vemos, pues, razón alguna que nos lleve a la necesidad de interpretar la ley en la forma que pretende la parte recurrida.

Para un estudio de la historia de la materia, de las antiguas y de las modernas tendencias, recomendamos el examen de la Cyclopedia of American Government, 1914, vol. 1, p. 667, y vol. 3, págs. 177, 372 y 517, limitándonos a transcribir aquí lo que aparece en el tomo 3, pág. 179, segunda columna, de dicha obra. Es como sigue:

"Existen dos recientes movimientos que afectan vitalmente a la facultad de separar. Uno es la exigencia de que a los jefes ejecutivos se les haga responsables por sus subordinados y capaces para dirigirlos; y el segundo, que las separaciones por razones puramente de partido no destruirán la eficacia del servicio civil. Constituyen éstos un reconocimiento del hecho de que la eficiencia gubernamental requiere concentración de las facultades administrativas y responsabilidad. (1) El sentimiento público ha ido gradualmente obteniendo que esta exigencia se convierta en ley para la mayor centralización administrativa en nuestros estados y ciudades. Hace una generación se hizo la tentativa restringiendo la facultad de separar con el fin de impedir la desmoralización continuada del servicio civil con separaciones arbitrarias por razones de partido; hoy el deseo es separar los cargos políticos de aquellos de carácter administrativo dando al gobernador y al alcalde mayor facultad sobre sus subordinados del orden político, tanto en cuestiones de separación como de nombramiento, y eximiendo a la fuerza de empleados del perjuicio ocasionado por cambios arbitrarios por cuestiones de partido cada vez que cambia el jefe ejecutivo. Hasta ahora la diferencia entre empleos políticos y administrativos no es de ningún modo completa o perfecta aun en el servicio civil nacional, pero los grandes cambios de la última generación prometen

mayor diferencia y una organización administrativa más perfecta en el futuro. (2) Todavía más lento ha sido el cambio en el sentido de dar a los gobernadores y alcaldes el control de sus empleados políticos por medio del derecho a separarlos. La razón de éstos es el temor público de que se abuse de la facultad para separar pues el derecho de poder separar puede ser una excusa para premiar servicios de partido. Presidentes animados de un espíritu público y que miran hacia el porvenir, gobernadores y alcaldes ansiosos de hacer que su trabajo sea efectivo han estado haciendo uso de la facultad de separar, en tanto les ha sido concedida, para el beneficio mutuo de sus administraciones y del público. El sentimiento público exige gradualmente que otros jefes ejecutivos hagan uso de la facultad de separar en la misma forma. El sentimiento público de los electores y el espíritu público de los jefes ejecutivos corregirá a su debido tiempo y hará desaparecer la mayor parte de los abusos que ha llevado consigo la facultad de separar. Cuando llegue ese tiempo, habiendo sido eliminada la última objeción, las restricciones arbitrarias sobre la amplia facultad del jefe ejecutivo para separar a sus subordinados de orden político desaparecerá.'' II Cyclopedia of American Government, 179.

A virtud de todo lo expuesto nos vemos obligados a concluir que la ilustrada corte sentenciadora erró al negarse a ejecutar la sentencia que ella misma dictara anteriormente en este caso.

Estamos conformes con la parte apelada con respecto al hecho de que la circunstancia de haber sido elegida una misma persona para el cargo de alcalde de la ciudad de San Juan, no implica que se trate de un mismo alcalde. Aceptamos la teoría establecida en los casos de California citados por el apelado. *Hubert* v. *Mendheim,* 64 Cal. 213, 220, y *Thurston* v. *Clark,* 107 Cal. 285 288. Pero no puede negarse que la circunstancia de ser en este caso la misma persona la que se sustituyó a sí misma en el cargo de alcalde, hizo innecesaria la formal sustitución en el pleito de una persona por otra.

Con respecto al segundo de los errores señalados por la parte apelante en su alegato, diremos que no tenemos datos dentro de este recurso para decidirlo con entera corrección.

No forma parte de la transcripción la solicitud por virtud de la cual el Dr. Belaval pidió el auto de *mandamus.* La

sentencia de la corte de distrito confirmada por esta Corte Suprema nada dispuso con respecto al pago de los sueldos que debía percibir el peticionario. La orden apelada nada tampoco decide sobre ese extremo.

En atención a lo expuesto, creemos más acertado dejar esta cuestión para que sea resuelta por la misma corte sentenciadora que tiene en su poder todos los datos necesarios para decidirla de acuerdo con los hechos y la ley.

No deseamos concluir esta opinión sin expresar que nada revela en los autos un proceder voluntariamente arbitrario por parte del demandado. No sabemos si en el fondo existió o no justa causa para la destitución y todo parece indicar que el alcalde actuó bajo la creencia de que el procedimiento que seguía estaba sancionado por la ley y por una decisión de este tribunal, la dictada en el caso de *Ruiz* v. *del Valle,* 17 D. P. R. 686, decisión que fué distinguida por esta misma corte cuando confirmó la sentencia que hoy se manda ejecutar. *Belaval* v. *Todd,* 22 D. P. R. 633.

Debe revocarse la orden recurrida y devolverse el caso a la corte de su origen para ulteriores procedimientos no inconsistentes con esta opinión.

> *Revocada la orden recurrida y devuelto el caso para ulteriores procedimientos no inconsistentes con la opinión.*

Jueces concurrentes: Sres. Asociados Wolf y Hutchison.

Jueces disidentes: Sres. Presidente Hernández y Asociado Aldrey.

OPINIÓN DISIDENTE EMITIDA POR LOS JUECES SRES. PRESIDENTE HERNÁNDEZ Y ASOCIADO ALDREY.

La única cuestión que está sometida a la decisión de este Tribunal Supremo en el presente recurso es si fué o no errónea la resolución que dictó el Tribunal de Distrito de San Juan, Sección 1ª., por la cual declaró no haber lugar a ejecutar la sentencia que había dictado ordenando la reposición

del apelante Dr. José S. Belaval en el cargo de que había sido separado por el Alcalde Roberto H. Todd. Cualquiera otra cuestión que no sea ésta debemos dejarla a un lado porque resultaría *obiter dicta.*

Los antecedentes de este caso son los siguientes: Siendo el Dr. Belaval médico director de los hospitales del municipio de San Juan fué separado de su cargo por el alcalde Sr. Todd y habiendo establecido un procedimiento de *mandamus* para que se obligara al alcalde a reponerlo en su destino porque lo había separado sin darle conocimiento de la causa de su cesantía, el tribunal de distrito libró el auto de *mandamus* y nosotros en grado de apelación confirmamos la sentencia porque de la petición, único documento que pudimos considerar por no habérsenos presentado las pruebas, no resultaba que el peticionario hubiera sido notificado y oído respecto a la causa de su separación. *Belaval* v. *Todd,* 22 D. P. R. 633. Comunicada nuestra resolución al tribunal inferior, solicitó entonces de éste el Dr. Belaval que librara auto perentorio para su reposición, petición que fué negada por dicho tribunal.

Mientras esos procedimientos y otros de *certiorari* tuvieron lugar, se verificaron en esta Isla las elecciones de noviembre de 1914 en las que, de acuerdo con la ley, se eligieron entre otros funcionarios las personas que por cuatro años habían de dirigir la administración municipal de los municipios de esta Isla, y, por tanto, los del municipio de San Juan, siendo Roberto H. Todd electo nuevamente para el cargo de alcalde y tomaron posesión las personas elegidas.

Con tales antecedentes la cuestión a resolver en esta apelación es si habiendo expirado el término por el cual fué electa la administración municipal durante la cual fué nombrado el Dr. Belaval por el Alcalde Todd tiene no obstante derecho a continuar en su destino de médico director de los hospitales a perpetuidad, mientras el cargo exista en el presupuesto municipal, a no ser que sea separado por justa causa, o si terminada aquélla por ministerio de la ley, cesa también

su derecho a estar en el destino y a no ser separado sin justa causa.

La ley dispone que el alcalde nombrará a todos los empleados municipales, necesitando para algunos de ellos la aprobación del concejo municipal, que hará que cumplan con sus deberes y que podrá separarlos por justa causa. En cuanto al secretario, al contador, al ingeniero encargado de las obras públicas y al director de sanidad y caridad dispone también que desempeñarán sus cargos por el período para el cual fué electo o nombrado el alcalde que los nombró. Así, pues, el derecho de estos cuatro funcionarios al cargo termina al ser electo o nombrado un nuevo alcalde y éste puede ser nombrado por el Gobernador en caso de vacante o de separación. En el presupuesto municipal no existe cargo alguno con el título de director de sanidad y caridad, por lo que nos inclinamos a creer que el Dr. Belaval, como médico director de los hospitales, desempeñaba las funciones de ese cargo y que, por tanto, es uno de los funcionarios que terminó en su derecho al cargo al cesar el alcalde que lo nombró. Realmente sus funciones son similares a las del funcionario expresado en la ley y son de tal índole que necesariamente la ley ha querido que sea de la absoluta confianza del alcalde, al igual que los otros funcionarios a que hemos hecho referencia.

Pero si así no fuere, siempre tendremos que si no cesa con el alcalde que lo nombró, termina su derecho al cargo como los restantes empleados municipales, cuando por ministerio de la ley se extingue la administración municipal durante cuya vida fué nombrado por el alcalde.

Nada dice la ley respecto al tiempo que estos empleados tienen derecho a desempeñar su cargo, pero teniendo en cuenta que la ley dispone que cada cuatro años los electores de un municipio elijan sus administradores, tenemos que llegar a la conclusión de que cada cuatro años termina el derecho de los empleados municipales a desempeñar sus puestos y que la condición de no ser separados sin justa causa dura solamente durante esos cuatro años, de un lado porque

no creemos que la administración municipal que según la ley
sólo tiene vida por cuatro años pueda nombrar empleados
por más tiempo del que ella misma puede vivir, y de otro
porque si la ley ha querido que cada cuatro años los electores
designen las personas que han de encargarse de la adminis-
tración municipal, dando así oportunidad a que triunfen otras
ideas políticas o económicas, no concebimos cómo pueda obli-
garlos a que desarrollen sus planes políticos o económicos con
empleados que no los secunden por su divergencia de ideas.
La ley permite que las ideas políticas o económicas triunfen
en los comicios y ha de entenderse también que permite sus
consecuencias.   Y no se diga que por medio de los jefes de
los distintos departamentos pueden el alcalde y la administra-
ción municipal llevar a cumplimiento las ideas que ofrecieron
al electorado porque si no cuentan con subordinados que les
sean adictos, les será muy difícil cumplir su misión, so pena
de acudir al procedimiento peligroso e ilegal de simular cau-
sas para separarlos.

La doctrina que se establece en la opinión de la mayoría
respecto a que todos los empleados, menos los cuatro especi-
ficados, tienen sus empleos a perpetuidad si no son separados
con justa causa, produce el efecto de crear para ellos un de-
recho que la Legislatura les negó al excluirlos del servicio
civil clasificado, derecho que les reconoce por el sólo nombra-
miento del alcalde y sin probar los requisitos de idoneidad
que se exigen a los comprendidos en el servicio civil.

Es cierto que se egitan dos teorías contrarias con respecto
a conveniencia de la inamovilidad de los empleados y que
se aducen numerosas razones a favor y en contra de ella,
pero hasta ahora sólo ha triunfado en nuestras leyes la ina-
movilidad para los empleados del servicio civil clasificado
dentro del cual no están comprendidos los empleados muni-
cipales.

Por estas razones opinamos que la resolución apelada debe
ser confirmada.