DOCTORA DOLORES PÉREZ MARCHAND, peticionaria y apelante, *v.* HON. EDUARDO GARRIDO MORALES, COMISIONADO DE SANIDAD, querellado y apelado.

No. 6877.—*Sometido:* Febrero 14, 1935. *Resuelto:* Mayo 7, 1935.

---

* NOTA: Véase el prefacio.

*Alberto S. Poventud*, abogado de la apelante; *Hon. Procurador General Benjamin J. Horton* y *T. Torres Pérez, Subprocurador*, abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El presente es un caso de *mandamus* iniciado por la Doctora Pérez Marchand contra el Comisionado de Sanidad Garrido Morales, conteniendo la solicitud dos causas de acción.

Para basar la primera, por virtud de la cual pide que se ordene al demandado que la restituya inmediatamente en su cargo de Médico–Tocólogo del Hospital de Distrito de Ponce, alega substancialmente que fué nombrada desde mayo 1, 1930 y se encontraba el 25 de octubre de 1933 desempeñando el indicado cargo creado por ley, dentro del Servicio Civil Clasificado, cuando recibió una comunicación del demandado destituyéndola sin que mediara formulación de cargos ni se le diera oportunidad de ser oída por la Comisión de Servicio Civil, obedeciendo tal destitución sólo a su negativa a enviar cierta contribución de dinero para fines políticos exigídale por funcionarios del Departamento de Sanidad.

Y para basar la segunda, por virtud de la cual solicita que se condene al demandado a pagarle $2,820 en concepto de daños y perjuicios, alega substancialmente que los había sufrido a la fecha de la solicitud en $660 y los sufriría en $2,160 más durante un año que suponía que duraría el litigio, calculados a base del sueldo que de acuerdo con la ley le correspondía percibir y venía percibiendo por el desempeño del cargo de que le había separado ilegalmente el demandado.

Librada orden para mostrar causa, compareció el demandado. Aceptó los hechos relativos al nombramiento y a la separación de la peticionaria del cargo de Médico-Tocólogo del Hospital de Distrito de Ponce, y negó que dicha separación se hiciera por el motivo y en la forma expuestos, alegando a este respecto substancialmente que ordenó a la peticionaria la práctica de cierto trabajo y la peticionaria desacató su mandato, formulándole cargos que contestó, y no siendo la contestación satisfactoria, la destituyó, ajustándose a la Ley de Servicio Civil. Negó que hubiera causado daño alguno que tuviera que indemnizar.

Trabada la contienda, fué el pleito a juicio, practicándose una larga prueba documental y testifical. El 10 de septiembre de 1934 la corte dictó sentencia declarando sin lugar la petición, sin especial condenación de costas, por no haberse agotado la vía administrativa. En su relación del caso y opinión, se expresó, en parte, como sigue:

"Limitando, pues, nuestra decisión a la primera cuestión que la peticionaria plantea en su petición, y que antes hemos estudiado, resolvemos que medió en este caso la formulación de cargos escritos, los que fueron contestados por la querellante, y que al no ser satisfactorios dichos cargos (sic) para el Comisionado de Sanidad, éste destituyó a la empleada querellante, pero remitió inmediatamente todo el expediente a la Comisión de Servicio Civil, la que no aparece de los autos haya hecho investigación alguna en el asunto, por lo que entendemos debe agotarse la vía administrativa antes de acudir a la vía judicial."

No conforme la peticionaria interpuso este recurso de apelación señalando en su alegato la comisión de cinco errores cometidos, a su juicio, por la corte de distrito, 1, al estimar que para su destitución definitiva se formularon cargos y 2, que debió comparecer a la Comisión de Servicio Civil antes de acudir a la corte; 3, al dejar de resolver que no existió el consentimiento de la Comisión exigido por la ley para su separación definitiva; 4, al no declarar que su destitución

se debió a su negativa a contribuir a fondos políticos, y 5, al no resolver la reclamación de daños.

Parece conveniente referirnos a la evidencia documental de ambas partes para fijar lo ocurrido en cuanto sea necesario para la resolución del caso según la opinión que del mismo hemos formado.

Son hechos admitidos que la peticionaria desempeñaba desde hace años el puesto de Médico-Tocólogo del Hospital de Distrito de Ponce, que fué nombrada debidamente y que su cargo está comprendido dentro del Servicio Civil Clasificado.

Así las cosas, el 6 de septiembre de 1933 el demandado en su carácter de Comisionado de Sanidad dirigió a la peticionaria en el suyo de Médico-Tocólogo, una carta que dice:

"Asunto: Servicio adicional.

"1. De acuerdo con el plan de reorganización que se está llevando a cabo en este Departamento, por la presente se ordena a Ud. atender cinco clínicas semanales en la Unidad de Salud Pública de Ponce; tres para niños y dos para prenatales, en adición al trabajo que Ud. realiza en el Hospital de Distrito de Ponce.

"2. Este trabajo adicional deberá Ud. empezarlo a rendir el lunes día 11 de los corrientes y las clínicas serán de 1:30 p. m. a 4:30.

"3. Para organizar su trabajo se pondrá Ud. de acuerdo con el Jefe de la Unidad de Salud Pública de Ponce, bajo cuyas órdenes prestará Ud. el servicio de estas clínicas."

En septiembre 8, 1933, la peticionaria contestó:

"Asunto: Servicio adicional.

"1. En contestación a la carta que acabo de recibir, en la que se me ordena atender cinco clínicas semanales en la Unidad de Salud Pública de Ponce, y bajo las órdenes del Dr. Montalvo Guenard, me complazco en hacer constar mi espíritu de cooperación con todo lo que beneficie las obras de salud pública y el plan de reorganización que lleva a cabo ese Departamento.

"2. Con fecha febrero 20, 1931 se suscitó la misma cuestión y hoy me permito remitir a usted copia de mi comunicación en aquella época, como también el endoso que mi proposición hubo de merecer del Dr. Osvaldo Goyco, Director del Hospital de Distrito de Ponce.

"3. Prácticamente, ese mismo trabajo se está realizando en la actualidad en los servicios de este Hospital. Los casos de las clínicas prenatales y recomendados directamente por la Oficina de la Unidad de Salud Pública, son reexaminados y atendidos por mí en el Departamento de Maternidad que está a mí encomendado. En el Hospital de Distrito también tenemos un Departamento de Pediatría en el que atiendo directamente a los pacientes. Además, efectúo ese mismo trabajo con los enfermos que acuden al Hospital y que nos son referidos para consulta por los diferentes municipios bajo el amparo de esta Institución. Puede Ud. obtener constancia de ·estos servicios en la forma que guste, y me permito añadir que mis razonamientos de febrero 20/31 para preferir las clínicas dentro del hospital, están actualmente reforzados por circunstancias personales con el Dr. Montalvo Guenard, cuyas demostraciones de antagonismo y de enemistad se vienen haciendo notorias desde hace algún tiempo.

"4. Quedo atenta a su respuesta, y, para que sea más rápida, me permito certificar esta carta, con la idea que llegue a sus manos antes del día 11 d/c, fecha fijada por Ud. para empezar las Clínicas en la Unidad de Salud Pública, y así no conceptúe usted mi no comparecencia a las mismas como un acto de indisciplina hacia el Departamento.

"5. Después de conocer Ud. las razones expuestas, espero saber si es posible que Ud. modifique su criterio respecto a la organización de dichos trabajos.''

Insistió el demandado el 15 de septiembre, 1933, como sigue:

"Asunto: Servicio de clínicas.

"1. Dèspués de haber estudiado su proposición para atender las clínicas Prenatales y de Higiene Infantil en el Hospital de Distrito y no en la Unidad de Salud Pública, como se le ordenaba por esta Oficina, y previa consulta con el Director de Unidades de Salud Pública de este Departamento, Dr. George C. Payne, lamento informarle que no puedo acceder a sus deseos de realizar este trabajo en el Hospital de Distrito, pues esto sería contrario a la política que sigue el Departamento en toda la isla respecto al funcionamiento de estas clínicas.

"2. Por este motivo insistimos en que este trabajo se realice bajo la dirección del Jefe de la Unidad de Salud Pública de ese municipio.''

Vino la peticionaria a San Juan con el propósito de en-

trevistarse personalmente con el demandado sin que lo lograra y a su regreso a Ponce, en septiembre 25, 1933, le dirigió la siguiente carta telegráfica nocturna:

"Señor: Considerando injustificadas condiciones superpuestas cargo médico tocólogo hospital distrito Ponce una imposición que según entrevista Sub-comisionado Malaret obedece exigencias políticas, oblígame dignidad personal renunciar cargo que siempre desempeñé cooperando intensamente problemas médico sociales pueblo servido. Confiaba eran efectivas garantías Ley Servicio Civil vigente. Por esa ley solicito treinta días licencia. Renunciaré cargo inmediatamente al vencimiento dicha licencia. Gracias. Dra. Pérez Marchand."

El demandado contestó en octubre 1, 1933, como sigue:

"Asunto: Orden administrativa.

"1. Acuso recibo de su telegrama de fecha septiembre 25, 1933 presentando la renuncia de su cargo como médico tocólogo del Hospital de Distrito de Ponce y solicitando una licencia por un mes, alegando para ello razones de índole política.

"2. En relación con este asunto deseo informarle que en setiembre 6, 1933, dirigí a Ud. una comunicación asignándole trabajo adicional en la Unidad de Salud Pública de Ponce con el objeto de mejorar la eficiencia del servicio en relación con los trabajos que Ud. presta a este Departamento.

"3. En setiembre 8 se recibió en esta oficina una carta suya solicitando se le relevara de este trabajo en la Unidad para realizarlo en el Hospital de Distrito de Ponce, comunicándole a Ud. en carta de setiembre 15 que no era posible acceder a su deseo pues ello era contrario a la política que sigue este Departamento en cuanto al funcionamiento de clínicas prenatales.

"4. A pesar de mi carta de setiembre 15 Ud. no acató la orden de este Departamento y en setiembre 25 envía un telegrama cuyo contenido es para mí muy extraño, no habiendo mediado otra cosa que una desobediencia por parte suya a las órdenes dictadas en beneficio del servicio por el que suscribe.

"5. Para poder considerar su solicitud de licencia y renuncia es necesario que Ud. lo haga remitiendo una carta en forma correcta, pues el Comisionado que suscribe ha tenido y desea tener toda clase de consideraciones para Ud. a pesar de haber Ud. desacatado una orden administrativa."

En octubre 3, 1933, la peticionaria escribió al demandado y éste le contestó en octubre 7, 1933, así:

"Asunto: Orden Administrativa. 1. Refiriéndome a su carta del día 3 del presente mes, deseo manifestarle que el único propósito que tuvo esta oficina al asignar a Ud. trabajo adicional en la Unidad de Salud Pública de Ponce, según carta que le fué dirigida con fecha 6 de septiembre del año en curso, fué el de mejorar la eficiencia del servicio. Para esto esta oficina no se ha inspirado en ningún otro motivo. 2. Siendo imprescindiblemente necesario iniciar el servicio de clínicas prenatales y para niños, que se ordenó a Ud. prestar en la Unidad de Salud Pública de Ponce bajo las órdenes del Dr. A. Montalvo Guenard, por la presente se le concede hasta el día 10 del presente mes de octubre para dar cumplimiento a las órdenes que en tal sentido ha recibido Ud. de esta oficina, de acuerdo con la referida carta del día 6 de setiembre de 1933."

A cuya contestación replicó por telégrafo la peticionaria en octubre 9, como sigue:

"Respetuosamente expóngole razonamientos presentádosle anteriormente testimonian mi propósito cooperar salud Pública disciplinadamente. Su carta octubre siete entregádame octubre nueve ordenándome servicio adicional clínicas oficina Sanidad octubre diez oblígame recurrir Comisión Servicio Civil y Asociación Médica para determinar preliminarmente alcance Ley Servicio Civil vigente que dice 'Cualquier asignación que envuelva un cambio sustancial en los deberes no podría efectuarse sin aprobación Comisión.' Improcedente respuesta correspondencia mía razonando conflicto condúceme cancelar anterior renuncia ajustada regla 43 vigente Ley, aun no considerada. Su actitud reasignándome deberes no comprendidos mi cargo médico tocólogo Hospital Distrito Ponce e imponiendo conflicto en servicio organizado confirma informe Sub Comisionado Malaret presión política único motivo para singularizarme. La ley resolverá donde razonamientos fracasan."

El 11 de octubre, 1933, el Director de la Unidad de Salud Pública de Ponce, Dr. Montalvo Guenard, se dirigió al Comisionado de Sanidad demandado en la siguiente forma:

"Asunto: Orden administrativa del Hon. Comisionado. 1. Cumplimentando vuestra carta de octubre 7, 1933, dirigida a la Dra. Dolores Pérez Marchand en relación con el servicio asignádole en esta

Unidad de Salud Pública para atender a las clínicas de prenatales y para niños bajo la dirección del que suscribe, tengo a bien informar a V. H. que hasta la fecha, 11 de octubre de 1933, no se ha reportado a esta oficina la distinguida compañera arriba citada como tampoco nos ha dignado aquélla con ninguna clase de excusa justificando su ausencia.''

El 13 de octubre, 1933, el Presidente de la Comisión de Servicio Civil, Sr. Hilera, contestó una carta del Comisionado demandado como sigue:

''En contestación a su carta del 13 del mes en curso, solicitando autorización para asignar al cargo que desempeña la Dra. Dolores Pérez Marchand ciertos deberes adicionales, se le informa, que sometido el caso a la Comisión, resolvió ella por unanimidad, que de acuerdo con las constancias oficiales y en particular con la Forma P. C. 101, o sea el cuestionario cumplimentado a los efectos de la clasificación del cargo, el trabajo adicional en Clínicas para niños y prenatales en la Unidad de Salud Pública de Ponce, que Ud. ha asignado a dicho facultativo, no constituye un cambio sustancial de los que contempla la regla XXXVII del Servicio Civil en los deberes de Médico Tocólogo del Hospital de Distrito de Ponce, cargo que la doctora Pérez Marchand desempeña, y sí una asignación de trabajo en armonía con los deberes y especialidad del referido cargo, para lo cual tiene facultad administrativa el Comisionado de Sanidad.''

Y en igual fecha el Fiscal General de Puerto Rico comunicó al dicho comisionado demandado su opinión en el mismo sentido que la de la Comisión de Servicio Civil.

En octubre 14 el Presidente de la Comisión de Servicio Civil, Sr. Hilera, contestó una carta de la peticionaria, así:

''Refiriéndonos a su carta del 10 del mes en curso y a los documentos a ella anexos, se informa a Ud. que sometido el caso a la Comisión, y vista dicha documentación y las constancias oficiales en este organismo, en particular la Forma P. C. 101, o sea el cuestionario cumplimentado a los efectos de la clasificación de su cargo, la Comisión considera que el trabajo de clínicas para niños y prenatales asignádole por el Comisionado de Sanidad es análogo al que comprenden sus deberes de Médico Tocólogo del Hospital de Distrito de Ponce, y, por consiguiente, resolvió que dicho trabajo no constituye un cambio substancial, de los que contempla la Regla

XXXVII de Servicio Civil, en sus deberes de Médico Tocólogo del Hospital de Distrito de Ponce.

"Siendo sus horas de trabajo en el referido hospital de 8 a 11 de la mañana y de 2 a 4 de la tarde, según igualmente consta en la Forma P. C. 101, y requiriendo el expresado trabajo de clínicas el tiempo comprendido entre la 1:30 y 4:30 de la tarde, el tiempo adicional que debe Ud. dedicar a tales clínicas será solamente una hora diaria o sea 5 horas semanales."

El 25 de octubre, 1933, se entregó a la peticionaria una carta del demandado fechada en octubre 14, 1933, que dice:

"Asunto: *Suspensión de empleo y sueldo.*

"De acuerdo con el párrafo segundo de la sección 28 de la Ley No. 88, 'Para crear la Comisión del Servicio Civil de Puerto Rico y delinear sus deberes y funciones, etc.,' aprobada en 11 de mayo de 1931, por la presente se suspende a Ud. de empleo y sueldo y se le conceden tres días a contar de la fecha en que reciba Ud. esta carta, para que informe por escrito las alegaciones que tenga que hacer en relación con los siguientes cargos:

"INSUBORDINACIÓN E INCUMPLIMIENTO DE ÓRDENES.—En septiembre 6 el Comisionado de Sanidad que suscribe ordenó a Ud. atender cinco clínicas semanales en la Unidad de Salud Pública de Ponce; tres para niños y dos para prenatales, sin que hasta la fecha, a pesar de haber transcurrido 33 días, desde la fecha en que dicha orden debía ser efectiva, Ud. haya dado cumplimiento a dicha orden, obstaculizando por el contrario con una actitud hostil los planes de reorganización que se están llevando a cabo en este Departamento para ajustar los servicios del mismo a las necesidades públicas.

"En 25 de septiembre del año en curso dirigió Ud. al Comisionado de Sanidad que suscribe un telegrama de carácter irrespetuoso en el cual califica como imposición injusta el trabajo asignádole en la Unidad de Salud Pública de Ponce, en armonía con los deberes y especialidad de su cargo de Médico Tocólogo del Hospital de Distrito de Ponce.

"En octubre 9 de 1933 dirigió Ud. al Comisionado que suscribe el siguiente telegrama que por sus términos violentos y por su contenido constituye un acto de abierta indisciplina, particularmente en lo que respecta a acudir a la Asociación Médica para plantear cuestiones puramente administrativas y potestativas del Comisionado de Sanidad:" (Se copia el telegrama de octubre 9 ya transcrito.)

La peticionaria por su abogado se dirigió en octubre 26,

1933, al demandado y al Presidente de la Comisión de Servicio Civil solicitando prórroga hasta noviembre 3, 1933, para contestar los cargos y obtuvo del Presidente de la Comisión la siguiente respuesta:

"Cargos Dra. Pérez Marchand no han sido radicados esta Comisión. Carecemos jurisdicción asunto."

En octubre 28, 1933, la peticionaria contestó al demandado como sigue:

"Asunto: Pretendida suspensión de empleo y sueldo.

"1. Comparece la Médico-Tocólogo del Hospital de Distrito de Ponce, acompañada de su abogado que suscribe, y con referencia a supuestos cargos formuládosle por el Hon. Comisionado de Sanidad Insular y notificados en octubre 25, 1933, requiriéndose contestación en el breve plazo de tres días, por la presente se hace constar:

"2. Que de acuerdo con el propio párrafo segundo de la sección 28 de la Ley No. 88, sobre Servicio Civil Clasificado, aprobada por nuestra Asamblea Legislativa en 1931, disposición en que se pretende fundar los alegados cargos imputados, no se ha cumplido por el Hon. Comisionado de Sanidad; (a) con el requisito de señalar, dentro del término especificado en dicha disposición legal, la duración de la supuesta suspensión; (b) ni tampoco con el requisito de haber informado inmediatamente a la Comisión de Servicio Civil de la aludida suspensión, a los efectos legales procedentes.

"3. Que el Hon. Comisionado de Sanidad igualmente dejó de observar lo dispuesto en el párrafo tercero, sección 28, de la indicada Ley de Servicio Civil de 1931, preceptiva de que para que un funcionario nominador pueda suspender a un subalterno, debe presentar ante la Comisión de Servicio Civil de 1931, por escrito, las razones para la suspensión, lo que no se ha hecho en este caso, según comunicación recibida de la citada Comisión.

"4. Que el Hon. Comisionado de Sanidad, al decretar la pretendida suspensión, tampoco ha actuado de acuerdo con la Regla XLI del Reglamento promulgado para la debida aplicación de la Ley de Servicio Civil de Puerto Rico, de 1931, al no estipular en la notificación de suspensión, ni en los supuestos cargos presentados, la duración de la suspensión y al no enviar 'inmediatamente a la Comisión de Servicio Civil una copia de dicho aviso.'

"5. Que la Médico-Tocólogo suscribiente ocupa un cargo o empleo dentro del Servicio Civil Clasificado, por lo que, de acuerdo con la

Ley y Reglamento a ese fin aprobados, no puede ser separada ni suspendida, excepto en la forma dispuesta por dicha Ley y Reglamento, lo que no se ha hecho, según ya se ha demostrado.

"6. Que en adición a lo anteriormente expuesto, la Médico-Tocólogo que suscribe niega enfáticamente que haya en modo alguno incurrido en supuestas insubordinaciones, irrespetuosidades o incumplimientos de deberes; y, por el contrario, reitera sus afirmaciones y ofrecimientos de cooperación y buena voluntad para con el Departamento de Sanidad de Puerto Rico, en la forma que resulta de la correspondencia cruzada con ese Departamento.

"7. En virtud de todo ello, la Médico-Tocólogo suscribiente estima la supuesta orden de suspensión como ilegal e inexistente, considerándose dentro y obligada a seguir, como se propone, cumpliendo con los deberes correspondientes e inherentes a su cargo de Médico-Tocólogo en el Hospital de Distrito de Ponce."

En esa misma fecha, octubre 28, 1933, el Comisionado demandado se dirigió al Presidente de la Comisión de Servicio Civil en la siguiente forma:

"En octubre 14, 1933, el Comisionado de Sanidad que suscribe formuló a la Dra. Dolores Pérez Marchand, Médico Tocólogo del Hospital de Distrito de Ponce, cargos por insubordinación e incumplimiento de órdenes, copia de los cuales se acompaña. Estos cargos fueron enviados al Dr. Osvaldo Goyco, Director de dicho Hospital, con órdenes para que los tramitara en caso de que la Dra. Pérez Marchand insistiera en su actitud de no dar cumplimiento a mis órdenes de atender ciertas clínicas relacionadas con su especialidad en la Unidad de Salud Pública de Ponce.

"En octubre 19 el Dr. Goyco envió a este Departamento una solicitud de licencia de la Dra. Pérez Marchand por 60 días, con promesa de renunciar su cargo al terminar dicha licencia.

"Como había cargos pendientes de tramitación, esta oficina no accedió a la licencia con promesa de renunciar solicitada por la Dra. Pérez Marchand y ordenó por teléfono al Dr. Goyco que le diera curso a los cargos, los cuales fueron enviados por correo certificado en octubre 21 y recibidos en octubre 24. De acuerdo con carta del Dr. Goyco en poder de esta oficina, los mismos fueron entregados el día 25 de octubre a la Dra. Pérez Marchand.

"Esta oficina ha aguardado tener conocimiento oficial de la entrega de los cargos formulados a la Dra. Pérez Marchand para enviar a esa Comisión como materia de récord copia de los mismos, lo cual hacemos por medio de la presente comunicación."

En noviembre 14, 1933, el demandado finalmente destituyó a la peticionaria de su cargo, comunicándole la destitución como sigue:

"Asunto: *Destitución.*

"La contestación que da usted a los cargos que se le formularon en octubre 14, 1933, recibidos por usted en octubre 25, no es satisfactoria. Queda usted, por tanto, separada definitivamente del cargo de Médico-Tocólogo del Hospital de Distrito de Ponce, a partir de octubre 25 del corriente año, fecha en que fué efectiva la suspensión de empleo y sueldo decretada contra usted."

El 17 de noviembre, 1933, el abogado de la peticionaria dirigió al Presidente de la Comisión de Servicio Civil una carta que dice:

"La Doctora D. Pérez Marchand, cuyo empleo como Médico-Tocólogo del Hospital de Distrito de Ponce estaba pendiente de una pretendida orden de suspensión decretada por el Comisionado de Sanidad, cuya ilegalidad intentaba demostrar ante esa Hon. Comisión, no obstante todo ello ha recibido en el día de ayer, 16 de noviembre de 1933, para tener efecto retroactivo desde octubre 25, 1933, una comunicación sobre destitución definitiva por el Comisionado de Sanidad.

"Como según la sección 28, par. 1ro., de la Ley de Servicio Civil, tal orden de destitución tuvo que haber sido dada previa formulación y presentación de cargos específicos ante esa Comisión y después de haber sido oída la Doctora, sin que hasta la fecha ésta haya recibido cargo escrito a los efectos de dicha orden de destitución, por la presente solicitamos de esa Hon. Comisión una certificación de si los referidos cargos para la supuesta destitución han sido o no archivados con esa Comisión con anterioridad al día 25 de octubre de 1933, fecha desde la cual se le ha dado por el Departamento de Sanidad efecto retroactivo a la susodicha destitución."

Y obtuvo la contestación que sigue:

"En cuanto a los demás extremos de dicha carta y a los de la posterior del 17 del mismo mes, se informa a Ud. que esta Comisión no ha actuado en este caso por tratarse de una destitución sumaria efectuada por el jefe nominador, de conformidad con el párrafo tercero de la sección 28 de la vigente Ley de Servicio Civil y de la Regla XLII de Servicio Civil."

Parece conveniente transcribir además la documentación en que se basó la peticionaria para alegar que su destitución se debió a causas políticas.   Dice:

"San Juan, P. R., 21 de agosto de 1933.—A los Jefes de Unidades de Salud Pública y Jefes Locales de Sanidad.—Estimado correligionario: El partido me ha conferido el honor de nombrarme recaudador en este Departamento.

"El propósito de establecer una cuota del 2% del sueldo que usted devenga como empleado de este Departamento, es para pagar la deuda que contrajo el partido durante la campaña pasada, y que culminó con un triunfo brillantísimo, de tal manera que nos puso en posesión de todos los departamentos del gobierno.

"Esperamos que usted contribuya con esa cuota asignada mensualmente hasta tanto se cubra el total de la deuda y se acumulen fondos para la próxima campaña eleccionaria que, aunque sería fácil para nosotros, siempre usted sabe que se incurre en grandes gastos y es bueno estar prevenido sobre este particular.

"La cooperación que usted preste a nuestro partido será estimada en lo mucho que vale.   Esperamos su contestación.—Atentamente, (Fdo.) José Cantellops.

"(Hay un sobre unido a la anterior carta, que dice: Government of Porto Rico—Department of Health, P. R.—Dra. Lola Pérez Marchand, Hospital de Distrito, Ponce, P. R.)"

"Agosto 30 del 1933.—Sr. Don José Cantellops, Departamento de Sanidad, San Juan, P. R.—Señor:—Correspondo a su carta circular del 21 de los corrientes, por la que usted solicita de mí una contribución política, con carácter de cuota al Partido Unión Republicana, equivalente al 2% del sueldo mensual que derivo por mis servicios como Médico-Tocólogo en el Hospital de Distrito de Ponce; y me permito objetar del modo siguiente:

"Acatando la Ley de Servicio Civil que rige mis relaciones y obligaciones como profesional especializada, ha sido mi inquebrantable norma abstenerme de participar en propagandas políticas de clase alguna y no milito, ni intereso militar por el presente, en ninguno de los partidos del país.

"Por respeto propio y por respeto de gentes me limito a las gestiones de mi cargo, y considero que será siempre la más alta garantía de mi especialidad el que yo me conserve libre de toda afiliación partidista.

"Crea usted que al negarme a contribuir con parte de mi sueldo, es mi propósito insistir en que no debo mi cargo a compromisos po-

líticos, y que me considero amparada por la Ley de Servicio Civil al así proceder.

"Confiando que usted sabrá interpretar mi actitud ante las autoridades políticas y esperando que mis razones estén a tono con órdenes superiores del señor Comisionado, quedo, muy atentamente, (Fdo.) Dra. Pérez Marchand, Med.-Tocóloga, Hosp. Dist. de Ponce."

"Agosto 30, 1933.

"Del: Médico Tocólogo del Hospital de Distrito de Ponce.

"Al: Hon. Com. de Sanidad de Puerto Rico, Dr. Eduardo Garrido Morales.

"Asunto: Protesta por cuota política.

"Señor: Con esta misma fecha he remitido carta original al Señor José Cantellops, en su carácter de Recaudador Oficial del Partido de la Mayoría en este Departamento, quien me ha escrito pidiéndome una cuota efectiva mensual, o parte de mi sueldo, por vía de contribución a cierto fondo de reserva para fines políticos.

"Me permito acompañar para su conocimiento y gobierno, una copia de mi contestación al referido recaudador político del Departamento de Sanidad, y espero que mi conducta merecerá su aprobación.—Respetuosamente, Dra. D. Pérez-Marchand, Méd. Tocóloga, Hosp. de Distrito de Ponce."

Siendo ésos los hechos, ¿cómetió la corte sentenciadora los errores que le atribuye la apelante o estuvo acertada al negarse a juzgar el caso en su fondo limitándose a desestimar la solicitud por no haberse agotado la vía administrativa?

La ley reguladora del caso está comprendida en la sección 28 de la Ley (No. 88) del Servicio Civil de Puerto Rico (Leyes de 1931, p. 557) que dice:

"Sección 28.—*Separaciones.*—Ninguna persona que ocupe una plaza o destino en el servicio clasificado será separada o despedida, salvo por causas justificadas y previa formulación de cargos, y no antes de dársele oportunidad para ser oída en defensa propia. Tales cargos serán presentados por cualquier funcionario superior, o por cualquier ciudadano, dentro de los treinta días después de su radicación, y serán considerados, investigados y resueltos por la Comisión de Servicio Civil.

"Nada de lo que arriba se dispone restringirá la facultad de ningún funcionario superior en cuanto a suspender a un subalterno por un período de tiempo razonable que no excederá de treinta días, en tanto se consideran las causas de la suspensión y se dicta la decisión

correspondiente. Cada suspensión arriba indicada deberá ser informada inmediatamente a la Comisión, y deberá ser sin sueldo; Disponiéndose, sin embargo, que la Comisión tendrá autoridad para investigar todas estas suspensiones y, en caso de que las desaprobare, deberá ordenar la restitución del sueldo al empleado suspendido.

"Ninguna de las disposiciones aquí comprendidas limitará la facultad de ningún funcionario nominador, en cuanto a suspender o destituir a un subalterno por justa causa, en bien de la eficiencia del servicio, presentándose ante la Comisión, por escrito, las razones para la suspensión y dándose a la persona objeto de la separación debido aviso respecto a ésta y respecto a los cargos que se le formulan, así como la oportunidad de contestarlos por escrito y de presentar ante la Comisión la prueba correspondiente que juzgue necesaria para su defensa. Todos los expedientes que se presenten con relación al caso serán documentos públicos. La resolución de la Comisión podrá, dentro de los treinta (30) días después de habérsele notificado al perjudicado, ser revisada por la Corte de Distrito de San Juan mediante una solicitud de revisión en la cual la Corte de Distrito podrá considerar todas las cuestiones de hecho y de derecho que en la misma se planteen, dictando, dentro de los treinta (30) días subsiguientes a la vista del caso, sentencia que será definitiva. La Comisión podrá reponer a un funcionario o empleado separado, sólo en caso de que previa audiencia, resultare que la separación se debió a razones de orden político o religioso."

El párrafo primero de la sección establece la regla general a seguir.

El párrafo segundo se refiere a suspensiones de empleo decretadas por un "funcionario superior". Expresamente prescribe que nada de lo dispuesto en el párrafo primero restringe la facultad de ningún funcionario superior en cuanto a suspender a un subalterno por un período de tiempo razonable que no excederá de treinta días, y ordena que de la suspensión se informe inmediatamente a la Comisión de Servicio Civil que tendrá autoridad para investigarla y ordenar la restitución del sueldo si la desaprueba.

El párrafo tercero trata de las suspensiones y destituciones de subalternos por justa causa decretadas por un "funcionario nominador".

Aquí se comenzó suspendiendo. La suspensión fué decretada por el "funcionario nominador" en octubre 14, 1933, pero no se comunicó al subalterno hasta octubre 25. Se puso en conocimiento de la Comisión el 28 de octubre en la forma que conocemos.

La cuestión de la suspensión no es la decisiva en el pleito. Lo es la de la destitución decretada en noviembre 14 por el Comisionado demandado, basándose en que la contestación de la peticionaria a los cargos que al suspenderla le formulara, no era satisfactoria.

¿Tuvo poder el Comisionado demandado para actuar en la forma en que lo hizo?

La contestación a esa pregunta requiere el examen detenido del párrafo tercero y último de la sección, el más obscuro de ellos.

Comienza disponiendo de una manera expresa que la regla general fijada en el primero no limita "la facultad de ningún funcionario nominador en cuanto a suspender o destituir a un subalterno por justa causa, en bien de la eficiencia del servicio." Si ahí terminara, no habría dificultad, pero continúa tras una coma diciendo "presentándose ante la comisión, por escrito, las razones para la suspensión y dándose a la persona objeto de la separación debido aviso respecto a ésta y respecto a los cargos que se le formulan, así como la oportunidad de contestarlos por escrito y de presentar ante la comisión la prueba correspondiente que juzgue necesaria para su defensa", y la dificultad surge entonces.

¿Debe entenderse que el legislador dispuso que la destitución no puede decretarse hasta que los cargos sean trasmitidos a la comisión y se dé oportunidad de comparecer ante ella al empleado o funcionario contra quien se formulan? Esa interpretación encuentra apoyo en la forma en que aparece el párrafo redactado, pero de seguirse destruiría el poder que se comienza reconociendo al funcionario nominador y que se le ha reconocido siempre, sujeto desde luego su ejer-

cicio a las limitaciones que la justicia exige. El funcionario nominador quedaría limitado a la formulación de los cargos. Sería la comisión la que tendría el poder de destituir después de investigarlos.

Lo que sigue disponiendo el párrafo que examinamos sobre trámite y revisión de la resolución de la comisión por las cortes, no ayuda mucho para la exacta fijación del pensamiento del legislador. Lo dispuesto finalmente, a saber: "La Comisión podrá reponer a un funcionario o empleado separado, sólo en caso de que previa audiencia, resultare que la separación se debió a razones de orden político o religioso," da la clave, a nuestro juicio, para la resolución definitiva del problema, porque no puede existir reposición sin separación, y porque el propio legislador habla de empleado o funcionario separado, esto es, ya separado cuando comienza a actuar la comisión.

Y así la interpretación lógica, la que da vida a todo lo dispuesto en la ley y está conforme con los precedentes y la jurisprudencia, es la que reconoce al funcionario nominador la facultad de destituir por justa causa, que implica formulación de cargos y oportunidad de defensa ante el propio funcionario, enviándose el expediente a la Comisión del Servicio Civil que lleva el récord de todos los empleados y funcionarios de la isla y ante la que el empleado o funcionario separado tiene una nueva oportunidad de defenderse y obtener su reposición en el caso de que la separación se deba a razones de orden político o religioso.

La teoría de la peticionaria es que el demandado no pudo destituirla por sí solo. Pudo a nuestro juicio, según la interpretación que acabamos de dar al estatuto.

█ Si el Comisionado demandado hubiera actuado al ejercitar su poder de una manera arbitraria, sin formulación de cargos y oportunidad de contestarlos, estaríamos conformes en que el *mandamus* procedería sin necesidad de aguardar la acción de la comisión, pero a nuestro juicio la corte senten-

ciadora no erró al decidir que aquí se formularon cargos y se dió oportunidad a la peticionaria para contestarlos como los contestó en efecto por escrito. No importa que se comenzara por la suspensión y que erróneamente se hiciera referencia al párrafo segundo de la sección 28 de la Ley de Servicio Civil, en vez de hacerla al párrafo tercero. La suspensión fué un paso previo que pudo conducir como condujo a la destitución. La ley se cumplió substancialmente.

■ Ahora bien, como el motivo que se alega como la verdadera causa de la separación es político, resulta que el caso es uno de aquéllos en que la comisión tiene facultad para reponer al funcionario destituído si sus méritos lo exigen, habiendo estado en tal virtud acertada la corte de distrito al decidir que no se había agotado la vía administrativa. Ésta está aún abierta para la peticionaria. Dentro de ella puede dilucidar su caso. La acción de las cortes vendrá luego, si fuere necesaria.

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR WOLF

No me hallo definitivamente en posición de diferir de la opinión de la mayoría al decir ésta que la Comisión de Servicio Civil tan sólo puede ordenar la reposición de un empleado cuando el mismo ha sido separado por razones de orden político o religioso. No obstante, toda vez que cada uno de los jueces de distrito de San Juan en casos independientes han resuelto lo contrario, me siento obligado a tener algunas dudas. Leyendo la sección 28 en su totalidad, así como otras disposiciones de la ley, me parece que una corte fácilmente podría concluir que la idea original de la Legislatura fué que la Comisión de Servicio Civil tuviera la facultad de reponer en su cargo a una persona separada del mismo; que el párrafo final fué un pensamiento posterior; que dada la idea principal no debería afectar el caso más de lo absolutamente necesario a fin de dar efecto a las palabras

usadas por la Legislatura. Es decir, que estoy de acuerdo con los jueces de la corte de distrito en la idea de que la intención general de la ley fué otorgar amplios poderes a la comisión.

Aceptando la decisión de la mayoría, se desprendería que las cuatro líneas finales de la sección 28 impiden a la comisión dictar una orden de reposición que sea absoluta y legalmente obligatoria, a no ser en los casos en que el empleado ha sido separado por razones de orden político o religioso. Sentado eso, trataré de exponer las razones de mi disentimiento.

Creo que la peticionaria en este csao tenía derecho a ser repuesta en su empleo. Cuando el jefe del departamento le dice a una persona "Por la presente le destituyo de su empleo," con o sin fundamento, la consencuencia necesaria es que el empleado no puede realizar su trabajo, o por lo menos que tal persona está físicamente fuera del cargo interinamente. En tanto en cuanto el jefe ejecutivo está facultado para así proceder, el empleado está separado de su empleo.

En varios casos, o sea en los de *Belaval* v. *Todd,* 24 D.P.R. 26, *Gil* v. *Chardón,* 41 D.P.R. 210, y *Jiménez* v. *Reily,* 30 D. P.R. 626, este tribunal, siguiendo innumerables precedentes, resolvió que las palabras "justa causa" significan, conforme han sido interpretadas tradicionalmente antes de la remoción del empleado cuya separación se trata de efectuar, que debe darse a éste el correspondiente aviso y la oportunidad de defenderse. Ahora mi punto es, y ésta es la piedra angular de mi posición, que lo que la Ley de Servicio Civil ha hecho ha sido transferir del jefe ejecutivo el derecho a oír los cargos. Sostengo que hoy en día en Puerto Rico el único cuerpo que tiene de ordinario el derecho a oír y resolver los cargos lo es la Comisión de Servicio Civil. En Puerto Rico la frase "justa causa," en mi opinión, envuelve actualmente la notificación al empleado y la oportunidad de defenderse, no ante el jefe ejecutivo, sino ante la Comisión de Servicio Civil.

El primero ha sido, a mi juicio, despojado de toda facultad para juzgar los cargos.

Si se me preguntara cuál sería el efecto de una decisión de la Comisión sosteniendo que los cargos eran infundados, mi respuesta sería que no tengo necesariamente que contestar la pregunta en forma específica, pero en tanto está dentro de mi potestad, diría que una decisión de la comisión es quizá similar a una sentencia declaratoria, a un caso sometido a la consideración de un árbitro u otra persona, o a la bien conocida labor de un contador-partidor. Ninguno de los actos así realizados se han convertido necesariamente en ejecutorios hasta que alguna corte actúa sobre ellos.

Siguiendo las consideraciones que inmediatamente preceden, sostengo que bajo el actual estado de la ley en Puerto Rico un jefe ejecutivo no puede separar legal y permanentemente a ninguna persona de un empleo hasta que los cargos por él formulados al empleado hayan sido oídos y resueltos por la comisión o por una corte. En Puerto Rico no existe entonces tal cosa como un juicio ante el funcionario nominador. Lo que sucede cuando un jefe actúa en la forma en que lo hizo en este caso es en efecto, según mi criterio, que al empleado se le separa físicamente del cargo, pero que el derecho al cargo en sí subsiste. Todos estamos muy familiarizados en derecho civil con la posesión material y el derecho a la posesión. Podría decirse que el empleado ha sido privado de la posesión del cargo, pero que no ha perdido su título y que, por tanto, puede reivindicarlo en una u otra forma, a pesar de que la Comisión de Servicio Civil no tiene autoridad para reponerle en su empleo. No puedo convenir con la opinión de la mayoría en que la ley preserva al jefe ejecutivo la facultad de oír y resolver los cargos.

Además, si la comisión concluye que los cargos son infundados, el jefe ejecutivo de ordinario quizá se sentirá obligado a reponer al empleado en su puesto. Empero, bajo la ley misma, si no estaba conforme con la decisión, podría acudir

a la corte de distrito para revisar el caso. No estoy en este momento tratando de explorar los poderes resultantes de dicha corte.

Bajo estas circunstancias, me siento obligado a disentir.